Citation Nr: 1607928 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 10-49 606 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

1. Entitlement to a higher initial disability rating (or evaluation) in excess of 10 percent for lumbar spine strain, degenerative disc disease, and spondylosis (lumbar spine disability). 

2. Entitlement to a separate compensable disability rating for neurological manifestations of the service-connected lumbar spine disability.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J. Ragheb, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, served on active duty from July 1979 to December 2001.
 
This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which granted service connection for lumbar spine strain, degenerative disc disease, and spondylosis, initially assigning a 10 percent disability rating effective January 1, 2002. 

In a May 2014 decision, the Board denied the appeal for a higher initial rating for the lumbar spine disability. The Veteran then appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In July 2015, the Court granted the Parties' Joint Motion for Remand (JMR), vacated the May 2014 Board decision, and remanded the issue on appeal to the Board for additional action.

In August 2015, pursuant to the July 2015 JMR, the Board remanded the case to the Agency of Original Jurisdiction (AOJ) to provide the Veteran with a VA examination. The Veteran was provided with a VA spine examination in October 2015, and the Board finds that the AOJ substantially complied with the August 2015 Board Remand directives. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (Fed. Cir. 2002). A discussion of the adequacy of the October 2015 VA examination provided pursuant to the August 2015 Board remand is included in the Duties to Notify and Assist section below

The issue of entitlement to a separate compensable rating for neurological manifestations of the service-connected lumbar spine disability is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDINGS OF FACT

1. For the initial rating period from January 1, 2002 to August 15, 2013, the lumbar spine disability was manifested by forward flexion to 90 degrees, painful motion, and a combined range of motion of the lumbar spine of 175 degrees. 

2. For the rating period from January 1, 2002 to August 15, 2013, the lumbar spine disability was not manifested by ankylosis, incapacitating episodes requiring physician-ordered bed rest having a total duration of at least 2 weeks during a 12 month period, moderate intervertebral disc syndrome with recurring attacks, moderate limitation of motion of the lumbar spine, forward flexion to 60 degrees or less, combined range of motion not greater than 120 degrees, lumbosacral strain or sacro-iliac injury with muscle spasm on extreme forward bending or unilateral loss of lateral spine motion in standing position, or muscle spasm, guarding, localized tenderness severe enough to result in abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

3. For the rating period from August 15, 2013, the lumbar spine disability has been manifested by forward flexion greater than 30 degrees but less than 60 degrees, to include as due to pain, as well as guarding not severe enough to result in abnormal gait or abnormal spinal contour.

4. For the rating period from August 15, 2013, the lumbar spine disability has not been manifested by ankylosis, incapacitating episodes requiring physician-ordered bed rest having a total duration of at least 4 weeks during a 12 month period, severe intervertebral disc syndrome with recurring attacks and intermittent relief, severe limitation of motion of the lumbar spine, forward flexion to 30 degrees or less, or severe sacro-iliac injury or lumbosacral strain with listing of whole spine to opposite side, positive Goldthwaite's sign, marked limitation of forward bending in standing position, loss of lateral motion with osteoarthritic changes, or narrowing or irregularity of joint space.


CONCLUSIONS OF LAW

1. The criteria for an initial disability rating in excess of 10 percent for lumbar spine strain, degenerative disc disease, and spondylosis have not been met or more nearly approximated for the rating period from January 1, 2002 to August 15, 2013. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. 
§§ 4.1, 4.2, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71, 4.71a, DCs 5242 and 5243 (effective after September 26, 2003), 5292 to 5295 (effective before September 26, 2003).

2. Resolving reasonable doubt in the Veteran's favor, the criteria for an initial disability rating of 20 percent, and no higher, for lumbar spine strain, degenerative disc disease, and spondylosis have been met for the rating period from August 15, 2013. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71, 4.71a, DCs 5242 and 5243 (effective after September 26, 2003), 5292 to 5295 (effective before September 26, 2003).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duties to notify and assist claimants in substantiating their claims for VA benefits. 
38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim and of the relative duties of VA and the claimant for procuring that evidence. 38 U.S.C.A. § 5103(a); 38 C.F.R. 
§ 3.159(b). Such notice should also address VA's practices in assigning disability evaluations and effective dates for those evaluations. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Notice should be provided to a claimant before the initial unfavorable AOJ decision on a claim. 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004); see also Mayfield v. Nicholson, 19 Vet. App. 103, 110 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006). 

As the appeal for a higher initial rating arises from disagreement with the initial rating following the grant of service connection, no additional notice is required. The United States Court of Appeals for the Federal Circuit (Federal Circuit) and the Court have held that, once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 
21 Vet. App. 112 (2007); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide VCAA notice upon receipt of a notice of disagreement); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date claims).

With regard to the duty to assist, VA has made reasonable efforts to obtain relevant records and evidence with respect to the issues adjudicated herein. Specifically, the information and evidence that has been associated with the claims file includes the Veteran's service treatment records (STRs), post-service VA and private treatment records, relevant VA examination reports, and the Veteran's written statements. 

VA most recently examined the lumbar spine in October 2015. The Board finds that the above-referenced examination report is adequate for VA rating purposes because it was written after an interview with the Veteran, examination of the Veteran, and contains findings regarding the severity of the lumbar spine disability on appeal supported by clinical data. See Barr v. Nicholson, 21 Vet. App. 303 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

In considering the VA examination reports of record, the Board notes that a VA medical examination is not inadequate merely because the medical examiner states he or she cannot reach a conclusion without resort to speculation. Jones v. Shinseki, 23 Vet. App. 382 (2011). Thus, while VA has a duty to assist a veteran by providing a medical examination in certain situations, that duty does not extend to requiring a VA examiner to render an opinion beyond what may reasonably be concluded from the procurable medical evidence. Nevertheless, simply concluding that a medical question could not be resolved without speculation, without providing any explanation why, renders an opinion inadequate. Id. The phrase "without resort to speculation" or use of speculative language in a medical report or opinion should reflect the limitations of knowledge in the medical community at large and not those of a particular examiner. Further, the examiner should clearly identify precisely what facts cannot be determined. For example, it should be clear in the examiner's remarks whether the answer to a medical question cannot be determined from current medical knowledge. Id. 

In this case, the October 2015 VA examiner indicated that he was unable to opine whether pain, weakness, fatigability, or incoordination could significantly limit functional ability during flare-ups, or when the Veteran's lumbar spine is used repeatedly over a period of time (beyond the repeated range of motion testing as performed during the VA examination pursuant to DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995)). However, the October 2015 VA examiner explained that he was unable to provide this information in terms of the degrees of additional range of motion loss due to the above-referenced symptoms or during flare-ups because the Veteran was not experiencing such symptoms or a flare-up at the time of the October 2015 examination.

In this case, it is not possible to schedule an examination during a flare-up or anticipate when the Veteran may experience pain, weakness, fatigability, or incoordination from the lumbar spine disability because the Veteran stated during the October 2015 VA examination that he experiences flare-ups two to four times per year, each of which lasts a few days to a week. Based on the above, it is not possible to schedule a VA examination within a few days of a flare-up, as there is an extremely small percentage chance that a VA examination date would fall during one of the two to four flare ups reported to occur during any one year period. Even if that were possible, a VA examination in this case is not likely to capture the lumbar spine disability picture at its worst because the worst of the flare-up may have passed by the time the Veteran is scheduled for a VA examination. Flare-ups of a lumbar spine disability are unpredictable and they usually do not last long enough for the Veteran to be scheduled for a VA examination. Even if scheduling an examination has any likelihood of landing on a day when there is a flare up, the feasibility of doing so is in question because attendance at the examination would require the Veteran to travel to a VA medical center and get examined at a time when his lumbar symptoms or flare-ups are at their worst, versus resting or seeking medical attention from a physician closer to him in order to obtain relief from symptoms as soon as possible (and, incidentally, any such treatment would constitute evidence documenting the flare up that the Veteran should submit in support of the claim). 

This Veteran's case involving an orthopedic (back) disability is distinguishable from Ardison v. Brown, 6 Vet. App. 405 (1994) where the Court held that VA was obligated to evaluate tinea pedis, a skin disorder, while in an "active stage" of the disease in order to fulfill the duty to assist. Unlike Ardison, the disability in this case is a musculoskeletal (lumbar spine) disability involving flare-ups at random times that are not seasonal. Ardison involved a skin disability, which was seasonal in nature, which made it likely that a VA examination during the active stage of the skin disease during that season would capture a flare-up. In this case, as explained above, it is not possible to anticipate when the Veteran may have a flare-up (which occurs only two to four times per year) or when he experiences pain, weakness, fatigability, or incoordination from the lumbar spine disability because flare-ups are unpredictable, are not seasonal in nature, and occur only two to four times per year. Therefore, limitation of motion measurements under these conditions cannot be provided due to limitations of medical knowledge and practicalities of scheduling the Veteran for a VA examination when he experiences one of the above-referenced limitations. Certainly, the Veteran can seek medical care during flare-ups or when he experiences low back pain, weakness, fatigability or incoordination, which would then be recorded in his treatment (medical) records and be available for VA to review when rating the disability on appeal. 

The Board finds that the VA examination reports, along with the Veteran's lay reports of symptoms that include flare ups and symptoms and impairment during those flare ups, are adequate to rate the lumbar spine disability on appeal because all of these provide a uniform disability picture during the staged rating periods on appeal, as outlined in more detail below. See McLendon v. Nicholson, 20 Vet. App. 79 (2006) (there is sufficient medical evidence on file for the Board to make a decision on the claim). VA considers all evidence in its adjudications, including rating disabilities, including lay reports by the Veteran of history, symptoms, complaints, and functional limitations, not just medical information or only information that is included in a VA examination report or treatment records. 38 U.S.C.A. § 7104(a) ("Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record"); 38 U.S.C.A. § 5107(b) ("Secretary shall consider all information and lay and medical evidence of record in a case"); 38 U.S.C.A. § 1154(a) (VA Secretary to provide regulatory provisions requiring due consideration of "all pertinent medical and lay evidence"). VA considers the history and context of a disability as important when rating that disability, and seeks a comprehensive picture of disability from the point of view of the veteran. See 38 C.F.R. §§ 4.1, 4.2. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met with regard to the issue of entitlement to a higher initial rating for the lumbar spine disability. 38 C.F.R. § 3.159(c)(4). 

Based on the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in this appeal, and no further development is required to comply with the duty to assist in developing the facts pertinent to the appeal. In view of the foregoing, the Board will proceed with appellate review.

Disability Rating Legal Authority

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two ratings are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3. 

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21 (2015). In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of a veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). 

When a claimant is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found. Such separate disability ratings are known as staged ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999) (noting that staged ratings are assigned at the time an initial disability rating is assigned). Here, the Board will evaluate the issue for a higher rating of the original award. In such cases, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. Id. The Board has considered whether staged rating is warranted with respect to the issue of entitlement to higher initial rating for the lumbar spine disability, and finds that the severity of the Veteran's lumbar spine disability on appeal has changed during the course of the appeal so as to warrant staged rating, as explained below. 

Pyramiding, that is the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when evaluating a veteran's service-connected disability. 38 C.F.R. § 4.14 (2015). However, it is possible for a veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; the critical element in permitting the assignment of several evaluations under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261- 62 (1994).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45; see also DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995). The factors involved in evaluating, and rating, disabilities of the joints include weakness; fatigability; incoordination; restricted or excess movement of the joint, or pain on movement. 38 C.F.R. § 4.45.

With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused by arthritis of the spine. The intent of the schedule is to recognize painful motion with joint or particular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint. Painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. 

Lay assertions may serve to support a claim for service connection by establishing the occurrence of observable events or the presence of disability or symptoms of disability subject to lay observation. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). The Federal Circuit has clarified that lay evidence can be competent and sufficient to establish a diagnosis or etiology when (1) a lay person is competent to identify a medical condition; (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau, 492 F.3d 1372.

In rendering a decision on appeal the Board must also analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

Lumbar Spine Disability Rating Analysis

During the pendency of this appeal, the regulations for rating disabilities of the spine were revised, effective September 26, 2003. See 68 Fed. Reg. 51,454 (Aug. 27, 2003). When regulations are changed during the course of an appeal, the criteria that are to the advantage of the claimant should be applied. However, if the revised regulations are more favorable to the claimant, then an award of a higher rating based on a change in law may be granted retroactive to, but no earlier than, the effective date of the change. See VAOPGCPREC 3-2003. The Board will discuss the "old" and "new" rating criteria, but notes that the "new" rating criteria can be applied only as of the effective date of the regulation, i.e., September 26, 2003.

The lumbar spine disability was initially rated as 10 percent disabling under 
DC 5295 for lumbosacral strain. 38 C.F.R. § 4.71a (2002). Prior to September 26, 2003, a 10 percent rating was warranted for a sacro-iliac injury and weakness or lumbosacral strain with characteristic pain on motion. A 20 percent rating was warranted for sacro-iliac injury and weakness or lumbosacral strain with muscle spasms on extreme forward bending, loss of lateral spine motion, unilateral, in standing position. A 40 percent rating was warranted for sacro-iliac injury and weakness or lumbosacral strain that was severe, with listing of the whole spine to the opposite side, a positive Goldthwaite's sign, marked limitation of forward bending in a standing position, loss of lateral motion with osteoarthritic changes, and narrowing or irregularity of the joint space. A 40 percent rating was also warranted when only some of these symptoms were present if there was abnormal mobility on forced motion. Id. Moreover, limitation of motion of the lumbar was rated as 10 percent disabling when slight, 20 percent disabling when moderate, and 40 percent disabling when severe. Id. 

The words "slight," "moderate," and "severe" as used in the various diagnostic codes are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence for "equitable and just decisions." 38 C.F.R. § 4.6. All the medical evidence was to be evaluated to determine the appropriate rating that would compensate the Veteran for impairment in earning capacity, functional impairment, etc. Nevertheless, the revised regulations (in 2003) provide definitions of normal orthopedic movement. While these measures are not binding on the old criteria, they are useful as guidance in determining the severity of a spinal injury.

Normal forward flexion of the thoracolumbar spine is zero to 90 degrees; extension is zero to 30 degrees; left and right lateral flexion are zero to 30 degrees; and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The combined normal range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of the spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. See 38 C.F.R. § 4.71a, General Rating Formula, Note (2); see also Plate V (2015).

Effective September 26, 2003, the schedule for rating spine disabilities was changed to provide for the evaluation of all spine disabilities under a General Rating Formula, unless the disability is rated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes (renumbered DC 5243), whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25 (2015). See 38 C.F.R. § 4.71a. Ratings under the General Rating Formula are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease.

The General Rating Formula provides a 10 percent disability rating for forward flexion of the lumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range-of-motion of the lumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is provided for forward flexion of the lumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range-of-motion of the lumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent disability rating is provided for forward flexion of the lumbar spine 30 degrees or less, or favorable ankylosis of the entire lumbar spine while a 50 percent disability rating is assigned for unfavorable ankylosis of the entire lumbar spine. Finally, a 100 percent disability rating is assigned for unfavorable ankylosis of entire spine. 38 C.F.R. § 4.71a. 

Note (1) to the rating formula specifies that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be separately evaluated under an appropriate diagnostic code.

Note (3) provides that, in exceptional cases, an examiner may state that because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range-of-motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range-of-motion stated in Note (2). Provided that the examiner supplies an explanation, the examiner's assessment that the range-of-motion is normal for that individual will be accepted.

Note (4) instructs to round each range-of-motion measurement to the nearest five degrees.

Note (5) provides that, for VA compensation purposes, unfavorable ankylosis is a condition in which the entire lumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 38 C.F.R. § 4.71a.

The regulation for rating intervertebral disc syndrome based on incapacitating episodes was revised effective September 23, 2002 and was slightly revised again in September 2003. Effective September 26, 2003, the regulations for rating disabilities of the spine were revised, and the diagnostic codes were reclassified. See 68 Fed. Reg. 51,454 (Aug. 27, 2003). 

Under the rating criteria in effect when the Veteran initially filed the claim for service connection, 10, 20, and 40 percent ratings were warranted for intervertebral disc syndrome that was mild, moderate with recurring attacks, and severe with recurring attacks and intermittent relief, respectively. A 60 percent rating was warranted for pronounced intervertebral disc syndrome with persistent symptoms compatible with sciatic neuropathy with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to site of diseased disc and little intermittent relief. 38 C.F.R. § 4.71a, DC 5293 (2002). 

The current IVDS Rating Formula in effect from September 26, 2003 provides a 10 percent disability rating for IVDS with incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months; a 20 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months; a 40 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months; and a 60 percent disability rating for IVDS with incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. An incapacitating episode is defined as a period of acute signs and symptoms due to IVDS that required bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a (2015). 

DC 5243 provides the following Notes: 

Note (1): An incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Id. 

Note (2): If intervertebral disc syndrome is present in more than one spinal segment, provided that the effects in each spinal segment are clearly distinct, each segment should be evaluated on the basis of incapacitating episodes or under the General Rating Formula for Diseases and Injuries of the Spine, whichever method results in a higher evaluation for that segment. Id.

The Veteran is in receipt of a 10 percent disability rating for the entire rating period from January 1, 2002 under the General Rating Formula (also rated under Diagnostic Code (DC) 5292 under the old rating criteria). Throughout the course of this appeal, the Veteran has generally contended that the lumbar spine disability have been manifested by more severe symptoms than that contemplated by the 10 percent disability rating assigned. 

Initially, under the old regulations, DCs 5287, 5288, 5290, and 5291 pertain to disabilities of the cervical and dorsal spine and are not applicable to the service-connected lumbar spine disability. Further, there is no lay or medical evidence of demonstrable deformity of a vertebral body (DC 5285), complete bony fixation of the spine (DC 5286), or ankylosis of the lumbar spine (DC 5289). Accordingly, these diagnostic codes (all which existed prior to September 26, 2003) are not applicable in the instant case. 3 8 C.F.R. § 4.71a (2002). Additionally, a higher rating under the General Rating Formula for ankylosis is not warranted for part of the initial rating period. See 38 C.F.R. § 4.71a (2015); February 2002, May 2007, August 2013, and October 2015 VA examination reports.

From January 1, 2002 to August 15, 2013 

After a review of all the evidence of record, both lay and medical, the Board finds that, for the initial rating period from January 1, 2002 to August 15, 2013, the criteria for an initial rating in excess of 10 percent for the lumbar spine disability have not been met or more nearly approximated under any of the diagnostic codes pertaining to the lumbar spine disability under the "old" or "new" regulations. 
38 C.F.R. §§ 4.3, 4.7, 4.71a, DCs 5292 to 5295 (2002), DCs 5242 and 5253 (2015). Throughout this period, the Veteran's lumbar spine disability manifested by forward flexion to 90 degrees and combined range of motion of the lumbar spine of 175 degrees, including due to pain. There are specific clinical findings that the Veteran had a normal gait, and did not have localized tenderness, muscle spasm, or weakness of the lumbar spine. Additionally, there were no incapacitating episodes as a result of the lumbar spine disability.

During the February 2002 VA examination, the Veteran reported low back pain for ten years. Upon examination in February 2002, the Veteran had forward flexion to 90 degrees, extension to 15 degrees, and right and left lateral flexion to 35 degrees. Even though the February 2002 VA examination report does not contain right or left lateral rotation measurements, the Board will use the combined range of motion of the lumbar spine of 175 degrees to rate the lumbar spine disability during this period. In this regard, the Board is resolving doubt in favor of the Veteran by assuming that right and left lateral rotation were to 0 degrees during the February 2002 VA examination because the VA examiner indicated that the Veteran had normal range of motion of the lumbar spine, and subsequent VA examinations show that the Veteran had substantial range of motion in right and left lateral rotation of the lumbar spine. The February 2002 VA examiner indicated that he could not ascribe any physical diagnosis or attribute any physical impairment to the Veteran's complaints of low back pain. The February 2002 VA examiner assessed that the Veteran demonstrated normal gait, and had no problem getting up and down off the examination table. 

During the May 2007 VA examination, the Veteran reported low back pain without radiation, stiffness, and flare-ups of variable frequency, severity, and duration. The Veteran denied weakness and indicated that the lumbar spine disability did not interfere with his work, but limited his exercise, yard work, and exertional activities. The Veteran stated that he could walk and stand for variable amounts of time depending on the day. The Veteran denied any incapacitating episodes in the previous 12 months where he had been prescribed bedrest or been hospitalized by a physician. Upon examination in May 2007, the Veteran had forward flexion to 90 degrees, extension to 20 degrees, right and left lateral flexion to 20 degrees, and right and left lateral rotation to 30 degrees with pain throughout range of motion, for a combined range of motion of the lumbar spine of 210 degrees. The May 2007 VA examiner assessed that the Veteran had normal gait and no limitations on standing or walking, and that the Veteran did not have localized tenderness, muscle spasm, or weakness of the lumbar spine. 

An October 2011 VA treatment record shows that the Veteran reported a history of back pain with periodic flare-ups, but that he was feeling okay. The October 2012 VA clinician assessed stable chronic back pain. A January 2012 VA treatment record shows complaints of low back pain that radiated down the lower extremities, left more than right, as well as episodes of discomfort that required bed rest for three days; however, the Veteran did not indicate that these episodes required physician-ordered bed rest. Upon examination in January 2012, the VA examiner assessed that the lumbar spine was not tender to palpation and that the Veteran had full lumbar spine flexion. 
 
Turning to the regulations in effect at the time the Veteran's claim was received, for the initial rating period from January 1, 2002 to August 15, 2013, the Board finds that the overall lumbar spine disability resulted in no more than characteristic pain on motion and mild limitation of motion of the lumbar spine. The Board finds that the revised regulations essentially define range of motion of the lumbar spine in excess of 60 degrees but not greater than 85 degrees to be mild. Viewing the Veteran's range of motion as a whole, the Board finds that the overall lumbar spine disability results in no more than mild limitation of motion. 38 C.F.R. § 4.71a (2002). This disability picture does not more nearly approximate moderate limitation of motion of the lumbar spine so as to warrant the higher (20 percent rating) under DC 5292. 

The Board also finds that, for the initial rating period from January 1, 2002 to August 15, 2013, a disability rating in excess of 10 percent is not warranted under DC 5293. The Board finds that the weight of the evidence shows that the Veteran did not have moderate IVDS with recurring attacks during this part of the initial rating period. Id. While the Veteran in January 2012 described episodes of discomfort that required bed rest for 3 days, the record does not indicate that these episodes were due to moderate IVDS or that bed rest was ordered by a physician. 

A rating in excess of 10 percent is also not warranted under DC 5294 or 5295. Id. The Board finds that, for the rating period January 1, 2002 to August 15, 2013, the weight of the evidence of record shows that the Veteran's lumbar spine disability was not manifested by a sacro-iliac injury or lumbosacral strain with muscle spasms on extreme forward bending, loss of lateral spine motion, unilateral, in standing position. The Veteran did not allege, and the record does not otherwise show, muscle spasms on extreme forward bending, loss of lateral spine motion, unilateral, in standing position during this period. Moreover, the February 2002 and May 2007 VA examination reports do not show muscle spasms of the lumbar spine.

Turning to the question of a rating in excess of 10 percent under the revised regulations, the Board finds that, for the initial rating period from September 26, 2003 (effective date of "new" rating criteria) to August 15, 2013, the lumbar spine disability has not met or more closely approximated the criteria for a higher (20 percent) disability rating. 38 C.F.R. §§ 4.3, 4.7, 4.71a (2015). As noted above, the Veteran had full flexion of the lumbar spine in January 2012, and during the February 2002 and May 2007 VA examinations, the Veteran had lumbar spine forward flexion to 90 degrees, and the worst combined range of motion of the lumbar spine was 175 degrees, including due to pain. Based on the above, the Board finds that the lumbar disability more closely approximated the criteria for a 10 percent rating under the revised regulations for the initial rating period from September 26, 2003 to August 15, 2013. 38 C.F.R. § 4.71a (2015).

The May 2007 VA examination report reflects that the Veteran asserted that he had low back pain throughout the lumbar spine range of motion. The general assertion of constant pain throughout lumbar spine range of motion still does not warrant a rating in excess of 20 percent, but would only raise an assertion of complete ankylosis due to pain with no movement whatsoever. See 38 C.F.R. § 4.59. The Court rejected such assertion in Mitchell v. Shinseki, 25 Vet. App. 32 (2011), indicating that a veteran's contention that pain, even if experienced throughout the range of motion on examination, warrants a higher rating under the diagnostic codes providing ratings for limitation of motion. Rather, it is the functional limitation, i.e., the additional limitation of motion, caused by pain or the other orthopedic factors under DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59, that must be considered in determining whether a higher rating is warranted. The May 2007 VA examiner noted that the Veteran had no ankylosis of the lumbar spine. 

The Board has considered and weighed the Veteran's assertions of functional impairment of limitation on prolonged walking and standing, exercise, yard work, and exertional activities. However, such functional impairment has been considered in arriving at the 10 percent rating for limitation of motion of the lumbar spine based on range of motion measurements, to include as due objective evidence of pain and subjective complaints of flare-ups of pain, resulting in the functional impairment described above. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, at 206-07. 

The weight of the evidence demonstrates that, during the rating period from September 26, 2003 to August 15, 2013, the lumbar spine disability did not more nearly approximate forward flexion of the lumbar spine greater than 30 degrees but not greater than 60 degrees, to include as due to pain, stiffness, and flare-ups of pain, combined range of motion of the lumbar spine less than 120 degrees, or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis, so as to warrant the next higher rating of 20 percent. 38 C.F.R. § 4.71a, General Rating Formula. The evidence of record shows that the functional range of motion was not additionally limited due to pain, fatigue, or incoordination sufficient to serve as a basis for a higher (20 percent) rating at any point during the initial rating period from September 26, 2003 to August 15, 2013. See Mitchell, 25 Vet. App. 32 ("pain itself does not rise to the level of functional loss as contemplated by the VA regulations applicable to the musculoskeletal system."). For these reasons, the preponderance of the evidence weighs against a finding that the lumbar spine disability more closely approximated a 20 percent rating throughout the rating period from September 26, 2003 to August 15, 2013. See 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a; DeLuca, 8 Vet. App. at 206-07. 

With respect to IVDS, the evidence shows that there were no incapacitating episodes sufficient to warrant a higher disability rating during this period. The evidence demonstrates that the Veteran was not prescribed bed rest by a physician during the rating period from September 26, 2003 to August 15, 2013 as a result of an incapacitating episode relating to the lumbar spine. Moreover, the February 2002 and May 2007 VA examination reports, as well as the treatment records during this period, show no findings of IVDS and the Veteran reported no incapacitating episodes relating to the lumbar spine disability during the 12 months prior to the May 2007 VA examination. As such, an initial rating in excess of 10 percent is not warranted based on IVDS during the rating period from September 26, 2003 to August 15, 2013. 38 C.F.R. § 4.71a, DC 5243 (2015). 

From August 15, 2013 

During the August 2013 VA examination, the Veteran asserted that he had low back pain, which he reported was made worse with prolonged standing, and that he could no longer run because of the pressure on the lower back. During the October 2015 VA examination, the Veteran advanced that he had low back pain, which he rated at 4 out of 10, which he reported was made worse with prolonged standing, heavy lifting, pushing the lawn mower, prolonged walking, and prolonged weedeating. The Veteran also described flare-ups of back pain, which lasted for 2 to 3 days during which he had difficulty moving.

After a review of all the evidence of record, both lay and medical, the Board finds that the lumbar spine disability has more nearly approximated forward flexion greater than 30 degrees but not greater than 60 degrees to warrant a 20 percent disability rating for the initial rating period from August 15, 2013. See 38 C.F.R. § 4.71a, General Rating Formula (2015). The August 2013 VA examination report shows that the Veteran had forward flexion to 70 degrees with objective evidence of painful motion beginning at 30 degrees. The October 2015 VA examination report shows that the Veteran had forward flexion to 70 degrees, to include after repetitive use testing. In light of the functional impairment described by the Veteran during the August 2013 and October 2015 VA examinations, as outlined above, and resolving doubt in favor of the Veteran, the Board finds that the criteria for a 20 percent disability rating for the lumbar spine disability have been met for the initial rating period from August 15, 2013. Id. 

The Board finds that, for the initial rating period from August 15, 2013, the criteria for an initial rating in excess of 20 percent for the lumbar spine disability have not been met or more nearly approximated under any of the diagnostic codes pertaining to the back under the "old" or "new" regulations. 38 C.F.R. §§ 4.3, 4.7, 4.71a, DCs 5292 to 5295 (2002), General Rating Formula (2015). Turning to the regulations in effect at the time the Veteran's claim was received, for the initial rating period from August 15, 2013, the Board finds that the overall lumbar spine disability has resulted in no more than moderate limitation of motion. The Board finds that the revised regulations essentially define range of motion of the lumbar spine in excess of 30 degrees but not greater than 60 degrees to be moderate. The August 2013 VA examination report shows that the Veteran had forward flexion to 70 degrees with objective evidence of painful motion beginning at 30 degrees and the October 2015 VA examination report shows that the Veteran had forward flexion to 70 degrees, to include after repetitive use testing. Viewing the Veteran's range of motion measurements as a whole, the Board finds that the overall lumbar spine disability results in no more than moderate limitation of motion. 38 C.F.R. § 4.71a (2002).

The Board also finds that, for the initial rating period from August 15, 2013, a disability rating in excess of 20 percent is not warranted under DC 5293. The next available rating (40 percent) requires severe intervertebral disc syndrome with recurrent attacks and intermittent relief. Id. The weight of the evidence does not reflect this degree of severity. Specifically, the August 2013 and October 2015 VA examination reports show clinical findings of IVDS but without any attacks or episodes over the previous 12 months. 

A rating in excess of 20 percent is also not warranted under DC 5294 or 5295. Id. The next available rating (40 percent) requires a severe sacro-iliac injury or lumbosacral strain, with listing of the whole spine to the opposite side, a positive Goldthwaite's sign, marked limitation of forward bending in a standing position, loss of lateral motion with osteoarthritic changes, and narrowing or irregularity of the joint space. 38 C.F.R. § 4.71a, DCs 5294, 5295 (2002). The weight of the evidence does not reflect this degree of severity. Specifically, at no point was a positive Goldthwaite's sign mentioned nor was there marked limitation of forward bending in a standing position. The August 2013 and October 2015 VA examination reports show no spinal alignment or contour abnormalities. A 40 percent rating is also warranted when only some symptoms are present if there is also abnormal mobility on forced motion; however, abnormal mobility on forced motion is not reflected in the VA treatment records or examination reports of record during this period.

Turning to the question of a rating in excess of 20 percent under the revised (or "new") regulations, and after a review of all of the evidence, the Board finds that at no time during the rating period from August 15, 2013 have the criteria for a rating in excess of 20 percent for the lumbar spine disability been met or more nearly approximated. At no time during the rating period from August 15, 2013, even with consideration of limitation of motion due to pain, stiffness, and flare-ups of pain did the lumbar spine disability manifest by forward flexion of the thoracolumbar spine to 30 degrees or less or favorable or unfavorable ankylosis of the entire thoracolumbar spine. 

The August 2013 VA examiner estimated lumbar spine flexion to 70 degrees with objective evidence of pain starting at 30 degrees. However, in light of the lay and medical evidence of record with respect to the overall functional impairment associated with the lumbar spine disability, the Board finds that the August 2013 VA examiner's estimate of pain onset at 30 degrees of forward flexion does not constitute functional limitation equivalent to lumbar spine forward flexion functionally limited to 30 degrees. See Mitchell, 25 Vet. App. 32 ("pain itself does not rise to the level of functional loss as contemplated by the VA regulations applicable to the musculoskeletal system."). 

During the August 2013 VA examination, the Veteran reported low back pain which was made worse with prolonged standing for more than 10 minutes after which time he had to sit down, partly due to lower extremity numbness and pain. The Veteran stated that he could no longer run, but that he tolerated walking for exercise. The Veteran indicated that he did not have to take time off work due to the lumbar spine disability because he could work through the pain and that, as a helicopter pilot, pain is improved when he is seated in the cockpit because it is easier on his back. The Veteran denied having any flare-ups of the lumbar spine disability and indicated that he occasionally took Ibuprofen, which relieved back pain some of the time. 

Upon examination in August 2013, other than the notation of objective evidence of low back pain at 30 degrees of forward flexion, the VA examiner indicated that the Veteran had forward flexion to 70 degrees after repetitive use testing. This weighs against a finding that the functional impairment resulting from the lumbar spine disability more nearly approximates forward flexion limited to 30 degrees. The August 2013 VA examiner indicated that, while the Veteran had localized tenderness to the lateral to lumbosacral junction bilaterally, the Veteran did not have guarding or muscle spasm of the lumbar spine. The August 2013 VA examiner indicated functional impairment due to less movement than normal and pain on movement, but did not provide such impairment in terms of range of motion measurements. However, the August 2013 VA examiner noted that the Veteran reported that the lumbar spine disability did not limit his work duties, but if he were required to perform prolonged standing or repetitive side bending, his job performance may be limited. The record does not show that the Veteran's job duties as a helicopter pilot require either prolonged standing or repetitive side bending. 

During the October 2015 VA examination, the Veteran described intermitted low back pain which was maximally located over the entire lumbar region involving the lower paraspinous region and the entire midline lumbar spine. The Veteran described the pain as achy and burning and rated pain at 4 out of 10, which was made worse with prolonged standing to wash the dishes, lifting wood, lifting
hay bales, bending over to perform weeding and other gardening activities, house cleaning, pushing a lawn mower on a steep hill, picking apples at the orchard for one hour, prolonged walking at the mall, lifting 50-pound feed bags at waist height, and prolonged weedeating. The Veteran stated that pain was relieved by heat and ice, changing positions, sleeping in a recliner, and when his wife applied pressure over the lumbar region while the Veteran was in the lateral position. The Veteran denied any lumbar muscle spasms and indicated that there are days when he could take his dogs for short walks without any back problems. The Veteran reported flare-ups of the lumbar spine disability where he had pain at 10 out of 10 so that he could barely roll when he lay down, had to get help to go to bathroom, and felt as if his back locked up. The Veteran indicated that these flare-ups occurred 2 to 4 times per year, lasting a few days to a week each. The Veteran also described functional impairment including difficulties with exercise, putting clothes on, skiing, playing golf, canoeing, bending to pick items off the floor, and plumbing under the sink. 

Upon examination in October 2015, the VA examiner estimated lumbar spine flexion to 70 degrees, to include as due to pain and after repetitive use testing, in addition to the other range of motion measurements provided above. The October 2015 VA examiner also assessed that there was no additional loss of function or range of motion after repetitive use testing. This weighs against a finding that the lumbar spine disability more nearly approximated forward flexion to 30 degrees as required by the next higher (40 percent) rating. The October 2015 VA examiner indicated that there was no objective evidence of pain with weight-bearing. Moreover, the October 2015 VA examiner indicated that the Veteran had no muscle spasm or localized tenderness, but had guarding of the lumbar spine that was not severe enough to result in abnormal gait or abnormal spinal contour. 

The October 2015 VA examiner observed that the Veteran walked with a symmetric gait and remained seated during the interview with no apparent distress. The October 2015 VA examiner indicated that, while a pain reaction was observed during each range of motion repetition, there was no intermediate pain reaction during an arch of movement, and the Veteran was observed to grunt or moan at the end point of each movement. The Veteran was also observed to bend over to pick his shoes off the floor after the examination with slowed movement, which reflects forward flexion well in excess of 30 degrees. The October 2015 VA examiner indicated that there was no observed objective evidence of localized tenderness or pain on palpation of the joints or associated soft tissue of the thoracolumbar spine. The October 2015 VA examiner's notation of objective evidence of pain (grunting or moaning) at the end point of each range of motion (flexion to 70 degrees) also weighs against a finding of lumbar forward flexion to 30 degrees or less as required by the next higher rating, because if there was objective evidence of forward flexion to 30 degrees, the VA examiner would have noted objective evidence of pain before the mid-point of range of motion. The October 2015 VA examiner's observation of the Veteran's ability to bend to pick up his shoes off the floor weighs against a finding of functional impairment that more nearly approximates forward flexion to 30 degrees. Bending to pick up the shoes off the floor, albeit with a slow movement, shows that the Veteran was able to reach forward flexion approaching 90 degrees; therefore, even after considering pain, slow movement, and other orthopedic factors, in the context of the other clinical findings and the Veteran's reports of abilities and limitations of the low back, this evidence weighs against a finding of functional impairment that more nearly approximates forward flexion to 30 degrees as required for a higher rating of 40 percent under the General Rating Formula. 38 C.F.R. § 4.71a. 

Finally, the Veteran described functional impairment which reduced his ability to perform repetitive heavy lifting, repetitive bending, prolonged walking, and prolonged standing due to chronic intermittent back pain. However, all the symptomatology and functional impairment described above result from the limitation motion of the lumbar spine, to include as due to pain and all the symptoms described by the Veteran, which results in the 20 percent rating under the "new" General Rating Formula. 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a; DeLuca at 206-07. 

The weight of the evidence demonstrates that during the rating period from August 15, 2013, the lumbar spine disability did not more nearly approximate forward flexion of the lumbar spine to 30 degrees or less, or unfavorable or favorable ankylosis of the lumbar spine, to include as due to pain or other Deluca and 
38 C.F.R. §§ 4.40, 4.45, 4.59 orthopedic factors so as to warrant the next higher rating of 40 percent. 38 C.F.R. § 4.71a, General Rating Formula (2015). The evidence of record shows that the functional range of motion is not additionally limited due to pain, fatigue, or incoordination sufficient to serve as a basis for a higher rating at any point during the rating period from August 15, 2013. See Mitchell, 25 Vet. App. 32. For these reasons, the preponderance of the evidence weighs against a finding that the lumbar spine disability more closely approximates the next higher 40 percent rating under the "new" General Rating Formula for the rating period from August 15, 2013. See 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59; DeLuca, 8 Vet. App. at 206-07. 

The Board observes that the Veteran was found to have degenerative arthritis of the lumbar spine. However, DC 5003 allows for the assignment of a maximum 10 percent rating for one major joint (the lumbar spine is considered as one major joint); therefore, a higher rating is not available for assignment under DC 5003. Because limitation of motion of the lumbar spine has been rated under the General Rating Formula, a separate rating for the same painful limitation of motion or limitation of motion during flare-ups under DC 5003 is prohibited because it constitutes pyramiding with ratings under the General Formula, which rates on limitation of motion and the same or similar impairments that limit the same functions of the back. 38 C.F.R. § 4.14; Esteban, at 261-62; Burton v. Shinseki, 
25 Vet. App. 1, 4 (2011); Sowers v. McDonald, No. 14-0217 (Vet. App. Feb. 12, 2016). 

With respect to IVDS, the evidence shows that there were no incapacitating episodes sufficient to warrant a higher disability rating for the rating period from August 15, 2013. The VA examination reports of record show clinical findings of IVDS; however, the August 2013 and October 2015 VA examiners indicated that the Veteran had no incapacitating episodes over the previous 12 months due to IVDS. Because the weight of the evidence of record shows that the Veteran did not have incapacitating episodes (bed rest prescribed by a physician) having a total of at least 4 weeks but less than 6 weeks during the past 12 months, a disability rating in excess of 20 percent is not warranted based on IVDS for the rating period from August 15, 2013. 38 C.F.R. § 4.71a, DC 5243. 

Extraschedular Consideration

The Board has considered whether referral for an extraschedular rating would have been warranted for the lumbar spine disability for any part of the initial rating period on appeal. An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1); see Fanning v. Brown, 4 Vet. App. 225, 229 (1993). 

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular ratings for that service-connected disability are inadequate. Second, if the schedular rating does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether the veteran's disability picture requires the assignment of an extraschedular rating. 

Turning to the first step of the Thun extraschedular analysis, the Board finds that all the symptomatology and impairment caused by the Veteran's lumbar spine disability is specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. For the rating period from January 1, 2002 to August 15, 2013, the Veteran's lumbar spine disability manifested by forward flexion to 90 degrees and combined range of motion of the lumbar spine of 175 degrees, including due to pain. For the rating period from August 15, 2013, the Veteran's lumbar spine disability has been manifested by forward flexion greater than 30 degrees but less than 60 degrees, pain, stiffness, and guarding not severe enough to cause abnormal gait or abnormal spinal contour. The schedular criteria for rating the lumbar spine disability specifically provide for ratings based on the presence of painful motion, whether or not such pain radiates; limitations of motion of the spine including due to pain and other orthopedic factors that result in functional impairment (38 C.F.R. §§ 4.40, 4.45, 4.59, DeLuca, Mitchell); and other clinical findings such as muscle spasm, guarding, abnormal gait, and abnormal spinal contours; and on the basis of incapacitating episodes. See Schafrath, 1 Vet. App. at 592 (read together with schedular rating criteria, 38 C.F.R. §§ 4.40 and 4.45 recognize functional loss due to pain); Deluca at 206-07 (functional limitations are applied to the schedular rating criteria to ascertain whether a higher schedular rating can be assigned based on limitation of motion due to pain and during flare-ups, and should be expressed in schedular rating terms of degree of range-of-motion loss); Burton, 25 Vet. App. at 4 (the majority of 
38 C.F.R. § 4.59, which is a schedular consideration rather than an extraschedular consideration, provides guidance for noting, evaluating, and rating joint pain); Sowers, No. 14-0217 (38 C.F.R. § 4.59 is limited by the diagnostic code applicable to the claimant's disability, and is read in conjunction with, and subject to, the relevant diagnostic code); Mitchell, 25 Vet. App. at 33-36 (pain alone does not constitute functional impairment under VA regulations, and the rating schedule contains several provisions, such as 38 C.F.R. §§ 4.40, 4.45, 4.59, that address functional loss in the musculoskeletal system as a result of pain and other orthopedic factors when applied to schedular rating criteria); see also Mitchell at 45 (Footnote 2) and Vogan v. Shinseki, 24 Vet. App. 159, 161 (2010) (when a condition is not listed in the VA disability schedule, VA may undertake rating by analogy where the disability in question is analogous in terms of the functions affected, the anatomical localization, and the symptomatologies of the ailments). 

The schedular rating criteria specifically include tenderness, spasm, and any and all limitations of motion of the spine in any direction, including in flexion, extension, lateral flexion, and rotation of the lumbar spine. 38 C.F.R. § 4.71a, Plate V. Such symptoms and impairment are part of or similar to symptoms listed under the schedular rating criteria. See 38 C.F.R. § 4.20 (schedular rating criteria provides for rating by analogy based on similar functions, anatomical location, and symptomatology); Mauerhan v. Principi, 16 Vet. App. 436 (2002) (the schedular rating criteria also include analogous symptoms that are "like or similar to" listed schedular rating criteria). Therefore, the Board finds that the record does not reflect that the lumbar spine disability is so exceptional or unusual as to warrant referral for consideration of the assignment of a higher initial disability rating on an extraschedular basis.

In this case, comparing the Veteran's disability level and symptomatology and impairment of the lumbar spine to the rating schedule, the degree of disability of the lumbar spine throughout the entire period under consideration is contemplated by the rating schedule and the assigned ratings are, therefore, adequate. Moreover, symptoms of stiffness, low back pressure, and discomfort are considered as similar to pain or painful motion. The Board has additionally considered ratings under alternate schedular rating criteria. See 38 C.F.R. § 4.20 (schedular rating criteria provides for rating by analogy based on similar functions, anatomical location, and symptomatology). 

The Veteran has reported functional impairment with respect to heavy lifting, repetitive bending, prolonged walking, and prolonged standing, house cleaning, pushing a lawn mower on a steep hill, picking apples at the orchard for more than one hour, running, dressing himself, skiing, playing golf, canoeing, plumbing under the sink, and prolonged weedeating. The Veteran, through the authorized representative, contends that an extraschedular rating is warranted in this case as a result of the above-referenced functional impairment. The authorized representative advanced that the Veteran has satisfied the criteria of "marked interference with employment" and that his lumbar spine disability represents an exceptional picture that is not adequately contemplated by the schedular 10 percent rating. See January 2016 Appellant's Post-Remand Brief. However, as explained above, the Veteran has indicated that he is not significantly limited in his work duties due to the lumbar spine disability. See August 2013 VA examination report. The Board finds that all the symptomatology and functional impairment described above result from the limitation motion of the lumbar spine, to include as due to pain, stiffness, guarding, and all the symptoms described by the Veteran are contemplated in the schedular ratings assigned under the General Rating Formula for Spine Disabilities either directly as limitation of motion, or indirectly as orthopedic factors that limit motion and function. 38 C.F.R. §§ 4.40, 4.45, 4.59 4.71a; DeLuca. The record reflects that the Veteran did not have muscle spasm, guarding, or localized tenderness severe enough to result in abnormal gait or abnormal spinal contour. 

With respect to functional impairment with respect to prolonged walking and standing, as well as running, interference with standing and weigh-bearing (walking and running necessarily involves weight-bearing) is considered as part of the schedular rating criteria under 38 C.F.R. § 4.45. To the extent that running or prolonged standing or walking causes incidental pain in the lumbar area, such pain is considered as part of the rating criteria, to include as due to orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59 factors such as weakness, incoordination, and fatigability, which are incorporated into the schedular rating criteria. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine (the schedular rating criteria contemplate limitation of spine motion with or without symptoms such as pain, whether or not it radiates); Schafrath, 1 Vet. App. 589; Burton at 4; Sowers, No. 14-0217, Mitchell at 33-36. 

As to functional impairment with respect to lifting, the lifting of day-to-day objects (to the extent the lifting is performed by the back rather than only arms and shoulders) may suggest lifting of the objects in the position of forward flexion, although simply lifting objects may equally involve minimal back flexion or movement when lifting by primarily using the legs, arms, and shoulders. To the extent that lifting requires forward flexion or lateral bending, forward flexion is explicitly part of the schedular rating criteria and lateral bending is part of the schedular rating criteria based on combined range of motion of the thoracolumbar spine. 38 C.F.R. § 4.71a, General Rating Formula for Spine Disabilities, Plate V. To the extent that lifting causes incidental pain in the lumbar area, such pain is considered as part of the rating criteria, to include as due to orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59 factors, which are incorporated into the schedular rating criteria. See Schafrath, 1 Vet. App. 589; Burton at 4; Sowers, No. 14-0217, Mitchell at 33-36. With respect to functional impairment with respect to mowing the lawn and weedeating, the slight forward flexion movement required to push or walk behind a mower or use a weedeating machine, and the slight lateral or twisting movements required for mowing or weadeating are contemplated by the schedular rating criteria based on limitation of motion, to include as due to pain or other orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59 factors, which are incorporated into the schedular rating criteria. 38 C.F.R. § 4.71a, General Rating Formula for Spine Disabilities, Plate V. To the extent that mowing the lawn or weedeating cause incidental pain in the lumbar area, such pain is considered as part of the rating criteria, to include as due to orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59 factors, which are incorporated into the schedular rating criteria. Schafrath, 1 Vet. App. 589; Burton at 4; Sowers, No. 14-0217, Mitchell at 33-36. 

As for functional impairment with respect to repetitive forward or lateral bending (including during picking apples), such impairment is specifically contemplated in the schedular rating criteria. Forward flexion is explicitly part of the schedular rating criteria and a schedular rating may be based on forward flexion alone. Lateral bending is part of the schedular rating criteria under combined range of motion of the thoracolumbar spine. See 38 C.F.R. § 4.71a, General Rating Formula for Spine Disabilities, Plate V. To the extent that bending causes incidental pain in the lumbar area, such pain is considered as part of the rating criteria, to include as due to orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59 factors, which are incorporated into the schedular rating criteria. See Schafrath, 1 Vet. App. 589; Burton at 4; Sowers, No. 14-0217, Mitchell at 33-36. As to functional impairment with respect to exercise, canoeing, skiing, house work, and plumbing, to the extent that any of these activities involves prolonged standing, walking, or bending, such functional impairment has been considered by the Board and is contemplated under the schedular rating criteria. See 38 C.F.R. § 4.45 (interference with sitting, standing, and weight-bearing are considered as functional limitation under the schedular rating criteria). To the extent that any of the above-referenced activities causes incidental pain in the lumbar area, such pain, whether it radiates or not, is considered as part of the schedular rating criteria. 38 C.F.R. § 4.71a, General Rating Formula for Spine Disabilities. Orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59 factors are also incorporated into the schedular rating criteria. See Schafrath, 1 Vet. App. 589; Burton at 4; Sowers, No. 14-0217, Mitchell at 33-36. 

As for functional impairment with dressing oneself, the specific acts of bending or twisting of the back that may be required to dress oneself are contemplated by the rating criteria based on limitation of motion, to include as due to pain and orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59 factors, which are incorporated into the schedular rating criteria. See Schafrath, 1 Vet. App. 589; Burton at 4; Sowers, No. 14-0217, Mitchell at 33-36. For example, to the extent that dressing oneself requires forward flexion of the lumbar spine, such forward flexion is explicitly part of the schedular rating criteria and a schedular rating may be based on forward flexion alone. To some lesser extent, dressing oneself may require lumbar extension, lateral flexion, and rotation, which are all part of the schedular rating criteria under combined range of motion of the thoracolumbar spine. See 38 C.F.R. § 4.71a, General Rating Formula for Spine Disabilities, Plate V.

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. In addition to the lumbar spine disability, the Veteran is service connected for inguinal hernia.

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. There is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. 

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 
38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. In the absence of exceptional factors associated with the service-connected lumbar spine disability, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 
38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is potentially an element of all rating issues. See Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, the record does not reflect, and the Veteran does not allege, that he is unemployable due to the only service-connected lumbar spine disability. The record reflects that the Veteran works as a helicopter pilot. See, e.g., October 2015 VA examination report. While the evidence shows that the Veteran has some difficulties at work due to the lumbar spine disability, the schedular rating criteria are intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. As such, the Veteran is already being compensated for any difficulties at work resulting from the service-connected lumbar spine disability. For the reasons above, and in light of the fact that the Veteran is currently working, the Board finds that a claim for a TDIU has not been raised and, therefore, is not before the Board on appeal.


ORDER

An initial disability rating in excess of 10 percent for the service-connected lumbar spine disability, for the period from January 1, 2002 to August 15, 2013, is denied; an initial disability rating of 20 percent, and no higher, for the period from August 15, 2013, is granted. 


REMAND

Whether Separate Rating for Neurologic Manifestations

As stated above, the General Rating Formula specifies that any objective neurologic abnormalities associated with a lumbar spine disorder should be separately rated under an appropriate diagnostic code. 38 C.F.R. § 4.71a, Note (1). 

A January 2012 VA treatment record shows that the Veteran reported low back pain that radiated down the lower extremities. During the August 2013 VA examination, the Veteran reported leg pain radiating from the lumbar spine, as well as lower extremity numbness. During the October 2015 VA examination, the Veteran reported bilateral thigh numbness. The August 2013 and October 2015 VA examiners opined that the Veteran did not have any signs or symptoms of lower extremity radiculopathy as a result of the service-connected lumbar spine disability. The October 2015 VA examiner opined that the bilateral thigh numbness was a symptom of IVDS; however, the VA examiner did not provide a rationale for such opinion and none of the VA examiners provided an opinion as to whether the leg pain is a neurological manifestation of the lumbar spine disability. Therefore, the Board finds that a VA examination is necessary to assist in identifying the etiology, and assessing the current severity, of any neurological manifestations of the lumbar spine disability, if present, including differentiating any reported symptoms that are due to non-service-connected disorder(s). See Mittleider v. West, 11 Vet. App. 181, 182 (1998), 11 Vet. App. at 182 (stating that the Board is precluded from differentiating between symptomatology attributed to a non-service-connected disability and a service-connected disability in the absence of medical evidence that does so, although the Board may not ignore such distinctions where they appear in the medical record). 

Accordingly, the issue of entitlement to a separate compensable rating for neurological manifestations of the service-connected lumbar spine disability is REMANDED for the following actions:

1. Schedule the appropriate examination to identify and assess the presence and severity of any neurological abnormalities associated with the lumbar spine disability. The examiner should specifically comment on the relationship between any identified neurological abnormality and the lumbar spine disability. Any and all indicated evaluations, studies and tests deemed necessary by the examiner should be accomplished. The relevant documents in the claims file should be reviewed by the VA examiner in connection with the examination.

2. Thereafter, the issue of entitlement to a separate compensable rating for neurological manifestations of the service-connected lumbar spine disability should be adjudicated. If the benefit sought on appeal is not granted, the Veteran and representative should be provided with a supplemental statement of the case (SSOC).

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). The Veteran is advised to appear and participate in any scheduled VA examination, as failure to do so may result in denial of the claim. See 38 C.F.R. § 3.655 (2015). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs