Citation Nr: 1761216 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 09-40 500 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to a rating in excess of 10 percent prior to February 20, 2008 for left knee degenerative arthritis. 


REPRESENTATION

Veteran represented by: Sean A. Ravin, Attorney-at-Law


ATTORNEY FOR THE BOARD

J. George, Associate Counsel






INTRODUCTION

The Veteran served on active duty in the Air Force from July 1961 to August 1965. 

This matter is before the Board of Veteran's Appeals (Board) on appeal from December 2007 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO).

When last on appeal in May 2016, the Board denied a rating in excess of 10 percent for left knee degenerative arthritis prior to February 20, 2008. Thereafter, the Veteran appealed to the United States Court of Appeals for Veterans Claims (the Court). In a April 2017 joint motion for remand (JMR), the Court vacated the denial of a rating in excess of 10 percent prior to February 20, 2008 and remanded the case to the Board to discuss the findings of the December 2007 VA examination of left knee and reports of flare-ups.


FINDINGS OF FACT

The Veteran experiences popping, crepitation, and mild effusion of the knee with movement.


CONCLUSION OF LAW

Prior to February 20, 2008, the criteria for an initial rating of 20 percent, but no higher, for left knee degenerative arthritis have been met. 38 U.S.C.A. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes (DCs) 5003, 5258, 5260, 5261 (2017).





REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has limited the discussion below to the relevant evidence required to support its findings of fact and conclusions of law, as well as to the specific contentions regarding the case as raised directly by the Veteran and those reasonably raised by the record. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Robinson v. Peake, 21 Vet. App. 545, 552 (2008).

General Legal Criteria

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C.A. § 1155. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage and the functional loss with respect to all of these elements. In evaluating disabilities of the musculoskeletal system, it is necessary to consider, along with the schedular criteria, functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995).

Functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective enervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45. It has been held that VA must analyze the evidence of pain, weakened movement, excess fatigability, or incoordination and determine the level of associated functional loss under 38 C.F.R. § 4.40, which requires VA to regard as "seriously disabled" any part of the musculoskeletal system that becomes painful on use. In Mitchell v. Shinseki, 25 Vet. App. 32 (2011), it was held that, although pain may cause a functional loss, "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Rather, pain may result in functional loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance." Id. 

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity, or atrophy of disuse. 
38 C.F.R. § 4.45.

Furthermore, the intent of the rating schedule is to recognize painful motion with joint or particular pathology as productive of disability. Thus, actually painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimum compensable rating for the joint. The joints should be tested for pain on both active and passive motion, in weight-bearing and non-weight-bearing and, if possible, with the range of the opposite undamaged joint. 38 C.F.R. § 4.59. In Burton v. Shinseki, 25 Vet. App. 1, 5 (2011), it was held that, when 38 C.F.R. § 4.59 is raised by the claimant or reasonably raised by the record, even in non-arthritis context, the Board should address its applicability.

Applicable Ratings

Although listed on the current code sheet as being rated under DC 5055, the Veteran's left knee degenerative arthritis was initial rated under DC 5003 which provides for a 10 percent rating for arthritis with x-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups and a 20 percent rating for arthritis with x-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups with occasional incapacitating episodes. 38 C.F.R. § 4.71a, DC 5003. When limitation of motion for the specific joint or joints involved is noncompensable under the appropriate diagnostic code, a 10 percent rating should be applied for each such major joint or joint group or minor joints affected. Ratings for limitation of motion for the affected joints are not to be combined with DC 5003. Id.

The limitation of motion diagnostic codes for the knee are DCs 5260 and 5261. Under DC 5260, a noncompensable rating will be assigned for limitation of flexion of the leg to 60 degrees; a 10 percent rating will be assigned for limitation of flexion of the leg to 45 degrees; a 20 percent rating will be assigned for limitation of flexion of the leg to 30 degrees; and a 30 percent rating will be assigned for limitation of flexion of the leg to 15 degrees. See 38 C.F.R. § 4.71a, DC 5260. 38 C.F.R. § 4.71a, DC 5260. Under DC 5261, a noncompensable rating is warranted if extension is limited to 5 degrees; a 10 percent rating is warranted if extension is limited to 10 degrees; a 20 percent rating is warranted if extension is limited to 15 degrees; a 30 percent rating is warranted if extension is limited to 20 degrees; a 40 percent rating is warranted if extension is limited to 30 degrees; and a 50 percent rating is warranted if extension is limited to 45 degrees. 38 C.F.R. § DC 4.71a, DC 5261.

Pertinent to the Board's discussion, a rating is also available under DC 5258 for a cartilage, semilunar, dislocated knee with frequent episodes of locking, pain, and effusion into the joint. 38 C.F.R. § 4.71, DC 5258.



Analysis

At different times during the period on appeal, the Veteran had stated that prior to February 20, 2008 his left knee disability was manifested by pain, difficulty, walking, standing still, and pain on motion. He is competent to testify to such lay observable symptomatology, and there is no evidence that these statements are not credible. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). As such, these statements are entitled to probative value as to the severity of the left knee disability during this period on appeal.

During the relevant period for consideration, the Veteran was provided with VA examinations in April 2002, January 2007, and December 2007. The April 2002 examiner found the Veteran to have flexion to 130 degrees, with pain on extreme motion. The examiner noted some tenderness on range of motion with crepitation. There was no evidence of instability in the left knee. Further, there was no evidence of ankylosis. Id. 

The January 2007 VA examiner found the Veteran to have flexion to 90 degrees, with pain at 90 degrees. See January 2007 VA examination. The Veteran had extension to -3 without pain. There were no additional limitations with repeated motion. The examiner noted functional limitations including walking and standing and there was a moderate impact on daily activities. The examiner noted moderate crepitation and mild tenderness. There was no evidence of instability in the left knee, nor was their evidence of ankylosis. Id.

At the December 2007 VA examination, the Veteran reported experiencing pain in the left knee since 1990 that he attributed to placing more weight on the left knee while walking due to his service-connected right leg disability. The Veteran reported stiffness and popping sensation on walking; however, no swelling, erythemous changes, giving way, or locking was noted. He treated his left knee pain with Vicodin three times per day as needed. He described flare-ups with walking and standing for just five minutes as well as squatting. Resting and light stretching eases the pain. The Veteran used a cane for ambulation. No surgery, episodes of dislocation, or inflammatory arthritis were noted. X-rays showed advanced degenerative arthritis of the left knee. 

Range of motion on both active and passive motion was tested. Extension was to -5 digress and flexion was from -5 degrees to 90 degrees. The range of motion was noted to be limited by pain with no additional loss on repetition. Examination of the left knee revealed tenderness and some effusion at the medial anterior aspect of the left knee as well as crepitation on motion. However, no erythemous changes, muscle atrophy, muscle spasms, or instability was noted. 

The examiner also noted that the Veteran's left leg was shorter than his right leg by 2 centimeters and opined that this was due to the knee replacement in the right leg that occurred in 1996. The examiner noted that the Veteran was able to bear weight on both legs, but that he tilted to the side when he walked. The Veteran was only able to squat down half way and walked with a limp. Mild genus varus was also noted in the left leg.

VA treatment records reflect occasional complaints of left knee pain during this period. A February 2003 treatment note reported decreased range of motion bilaterally but failed to provide range of motion for each knee. A December 2006 progress note reflected the Veteran to have flexion to 90 degrees. The physician noted joint tenderness and crepitus. Treatment records from October 2007 noted severe left knee pain and decreased range of motion, but the Veteran's specific range of motion was not provided. In November 2007, the Veteran noted continuing pain in his left knee. See November 7, 2007 VA treatment record. Further, VA treatment records during this period contain no evidence of ankylosis, malunion or loss of use. 

Based on the above examination reports, the Veteran is not entitled to a higher rating for limitation of range of motion for the left knee prior to February 20, 2008. The Veteran's flare-ups occurred on standing and walking for only a few minutes, as well as with squatting. These activities all occurred as a necessary part of the range of motion testing conducted during the examination. Further, the examiner reported that the range of motion of the left knee recorded during the examination was limited on extension to -5 degrees and on flexion to 90 degrees because of pain. Further, despite the examination finding of flexion to 130 degrees with pain on extreme motion, there was no showing of any functional impact of such pain on the Veteran's range of motion. Again, pain alone is an insufficient basis for an increased rating; there must be a showing of additional functional limitation. Mitchell. Thus, the range of motion reported, even when considering limitation due to pain and during flare-ups does not warrant a higher rating under DCs 5260 or 5261.

However, a higher 20 percent rating is warranted prior to February 20, 2008 under DC 5258. The Veteran reported a stiff and a popping sensation when walking, and the examiner noted tenderness, some effusion at the medial aspect, and crepitation on motion without instability. Similarly in a December 2006 VA treatment record, joint tenderness and crepitation was noted. Therefore, a 20 percent rating under DC 5258, which contemplates episodes of pain and effusion is warranted.

The Veteran reported taking Vicodin three times a day as needed for pain. As this indicates periodic or occasional use of the medication, it is unclear whether he was examined after taking Vicodin. Considering that the examination occurred a decade ago, inquiry as to the effects of a medication that the Veteran may or may not have taken prior to the examination would be speculative and not likely produce any probative findings. See 38 C.F.R. § 3.159(d). Rather, such development would likely only delay the claim, with no benefit flowing to the Veteran. Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991). 


 (CONTINUED ON NEXT PAGE)







ORDER

Prior to February 20, 2008, a 20 percent rating, but no higher, for left knee arthritis is granted, subject to the laws and regulations governing the payment of monetary benefits.


____________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs