# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-2873

Russell W. Burton, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided August 4, 2011)

*John Thomas Westermeier*, of Reston, Virginia, was on the pleadings for the appellant.

*Will A. Gunn,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Jeffrey J. Schueler* and *Carolyn F. Washington*, Deputy Assistant General Counsels, and *Kristen D. King-Holland,* all of Washington, D.C., were on the pleadings for the appellee.

Before KASOLD, *Chief Judge*, and DAVIS and HOLDAWAY, *Judges.*

KASOLD, *Chief Judge*: Veteran Russell W. Burton appeals through counsel an April 6, 2009, Board of Veterans' Appeals (Board) decision that denied entitlement to an initial disability rating for residuals of a left-shoulder injury with surgical repair in excess of 0% from August 28 to December 1, 2002, 10% from December 2, 2002, to May 22, 2003, 10% from October 1, 2003, to March 8, 2004, 20% from March 9, 2004, to April 20, 2005, and 10% from April 21, 2005, onward. On March 29, 2011, the Court issued a single-judge memorandum decision affirming the Board decision. On April 18, Mr. Burton filed a motion for a panel decision. On May 9, the Court granted Mr. Burton's motion for a panel decision and withdrew the March 29 memorandum decision. For the reasons that follow, the Board decision will be in part affirmed, and in part set aside and the matter remanded for further adjudication.

## I. FACTS

Mr. Burton served on active duty in the U.S. Army from February 1995 to February 1999. The record on appeal reflects that he complained of left-shoulder pain during service and underwent surgery for repair of a superior labrale anterior-posterior (SLAP) lesion[1] in September 1996.

In August 2002, Mr. Burton filed for benefits for a left-shoulder injury. In January 2003, the VA regional office (RO) granted service connection for residuals of a left-shoulder injury with surgical repair and assigned a noncompensable rating, effective August 28, 2002. The decision was based primarily on a November 2002 VA medical examination report that the RO characterized as finding that Mr. Burton had a "full range of motion with no pain." Record (R.) at 1079. In June 2003, the RO awarded a temporary 100% rating, effective May 23, 2003, because Mr. Burton underwent arthroscopic left-shoulder surgery for further repair of the SLAP lesion. In November 2003, the RO determined that the period of temporary total disability had ended, and reinstated a noncompensable rating, effective October 1, 2003. In June 2005, the RO awarded a 10% rating, effective March 9, 2004, based primarily on a March 2004 VA examination that found pain on motion and some functional loss with repetition. In June 2006, after Mr. Burton appealed his ratings to the Board, the Board remanded the matter for further development.

In October 2008, based on a reexamination of the medical evidence, the RO (1) maintained a noncompensable rating, effective August 28, 2002, (2) increased the noncompensable rating to a 10% rating, effective December 2, 2002, (3) maintained a 100% rating, effective May 23, 2003, (4) increased the noncompensable rating to 10%, effective October 1, 2003, (5) increased a 10% rating to a 20% rating, effective March 9, 2004, and (6) awarded a 10% rating, effective April 21, 2005. The Board decision on appeal affirmed these ratings, and this appeal followed.

## II. PARTIES' ARGUMENTS AND PANEL ISSUE

Mr. Burton asserts that the Board erred by failing to (1) address adequately 38 C.F.R. §§ 4.40, 4.59, and painful motion generally, or otherwise assign a minimum compensable rating for

---

[1] "SLAP lesion" is defined as an "injury involving the superior glenoid labrum and attachment of the biceps brachii, extending from anterior to posterior." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1040 (31st ed. 2007) [hereinafter DORLAND'S].

his actually painful joints, *see* 38 C.F.R. § 4.59 (2011) ("It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint."), and (2) assign two separate 20% ratings for his left-shoulder injury, based on his limitations on abduction and flexion.

In his initial brief, the Secretary disputed Mr. Burton's first contention, arguing that § 4.59 was applicable only to arthritis-related claims. *See* 38 C.F.R. § 4.59 (section begins: "With any form of arthritis . . . ."). However, his supplemental brief cites VA Fast Letter 04-22 (Oct. 1, 2004) ("As always, when evaluating knee function, . . . [§] 4.59 must be considered.") and acknowledges that § 4.59 can apply in non-arthritis contexts. Nevertheless, the Secretary still seeks affirmance of the Board decision, arguing that (1) the application of § 4.59 would not have altered the Board's determinations, (2) Mr. Burton's request for two separate ratings for one shoulder disability contravenes the Court's holding in *Cullen v. Shinseki*, 24 Vet.App. 74, 84 (2010), and (3) the Board did not otherwise err.

Mr. Burton's motion for panel decision was granted – and the Court's March 29, 2011, single-judge memorandum decision withdrawn – to resolve the parties' dispute and clarify the law as to whether § 4.59 is applicable only to claims involving arthritis. Although the Secretary in his supplemental brief now agrees that § 4.59 is not so limited, a panel decision remains warranted. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990) (panel decision required if case clarifies existing rule of law). *Compare, e.g., Wesenick v. Nicholson*, 20 Vet.App. 144 (2005) (table) ("Because the appellant has not been diagnosed with arthritis, 38 C.F.R. § 4.59 has no application to his claim."), *with Abbey v. Principi*, 18 Vet.App. 13 (2001) (table) (remanding case for Board to address § 4.59 in non-arthritis claim).

### III.  DISCUSSION

#### A.  38 C.F.R. § 4.59

*1. Law*

The "interpretation of a . . . regulation is a question of law" that we "review de novo." *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003). However, substantial deference is granted to the Secretary's interpretation of his own regulation so long as it is not inconsistent with the regulation

or otherwise plainly erroneous. *Smith v. Nicholson*, 451 F.3d 1344, 1349-50 (Fed. Cir. 2006) (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). Further, although "post hoc rationalizations" advanced for the first time on appeal are not entitled to deference, we note that the Secretary's interpretation of § 4.59 was recorded in a Fast Letter and not advanced for the first time on appeal. *Hickson v. Shinseki*, 23 Vet.App. 394, 400 (2010). As discussed below, we find that the Secretary's interpretation of § 4.59 is not inconsistent with the regulation or otherwise plainly erroneous. *See Smith*, *supra*.

We begin with the language of the regulation, *see Lengerich v. Dep't of Interior*, 454 F.3d 1367, 1370 (Fed. Cir. 2006) (citing *Bowles*, 325 U.S. at 414-15 (focusing on the "plain words of the regulation" to ascertain the meaning of the regulation)), which, when read as a whole, reasonably can be applied beyond circumstances of pain associated only with arthritis. Section 4.59 is entitled "Painful motion," and states in full:

> With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused by arthritis of the spine. The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.

Examining the first sentence out of context can lead one to consider that the regulation might apply only to the evaluation of arthritis claims. However, a proper interpretation of a regulation "examines and reconciles the text of the entire regulation, not simply isolated sentences." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1577-78 (Fed. Cir. 1995) (citing *Beecham v. United States*, 511 U.S. 368, 372 (1994)). In the eight-sentence regulation, arthritis is explicitly mentioned only in the first and third sentences and is not the subject of the majority of the regulation, which, inter alia, comments on the schedule's intent as to healed injury and malaligned joints (fifth sentence), how to

note crepitation[2] in the soft tissues (sixth sentence), and how to test joints for pain (eighth sentence). Rather, examining the regulation as a whole, the majority of the regulation provides guidance for noting, evaluating, and rating joint pain, and that guidance is devoid of any requirement that the pain be arthritis related. *Cf. DeLuca v. Brown*, 8 Vet.App. 202, 207 (1995) (rejecting interpretation that 38 C.F.R. § 4.45 is limited to muscle and nerve conditions because, inter alia, plain language does "not refer solely to muscle and nerve conditions").

Further, although the title of § 4.59 is not dispositive as to its scope, "section headings are tools available for the resolution of a doubt about the meaning of a statute" or regulation. *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) (internal quotation marks omitted); *see DeLuca*, 8 Vet.App. at 207 (looking to "the title of the regulation" to determine scope of 38 C.F.R. § 4.45). Here, the title – "Painful motion" – reflects the subject matter of the regulation in general and implies no limitation to arthritis claims. Notably, the Secretary has used the term "arthritis" in the title of regulations that deal exclusively with arthritis – *see* 38 C.F.R. § 4.58 ("Arthritis due to strain") – and did not do so for § 4.59, even though § 4.58 and § 4.59 were promulgated together. *See* 29 Fed. Reg. 6718, 6725 (May 22, 1964) (adding the 1945 rating schedule to the Code of Federal Regulations); *cf. DeLuca*, 8 Vet.App. at 207 (rejecting interpretation that 38 C.F.R. § 4.45 is limited to muscle and nerve conditions because, inter alia, title does not refer to muscles or nerves though other regulations refer thereto).

Of course, we do not find the introductory phrase regarding arthritis insignificant or superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)); *Savage v. Shinseki*, 24 Vet.App. 259, 265 (2011) (citing *Black & Decker Corp. v. Comm'r of Internal Revenue*, 986 F.2d 60, 64 (4th Cir. 1993) ("Regulations, like statutes, are interpreted according to canons of construction.")). Rather, it is a reasonable interpretation from examining the regulation as a whole that the introductory phrase defines the subject of the next three sentences, and does not limit the application of all eight sentences. Overall, the first portion of the regulation

---

[2]  "Crepitation" is defined as "a sound like that made by throwing salt into a fire . . . the noise made by rubbing together the ends of a fractured bone." DORLAND'S at 437.

regards painful motion involved with arthritis in particular. The remaining portion comments on joint pain in general, including pain caused by healed injury, malaligned joints, and crepitation; and the phrase introducing the first portion is neither insignificant nor limiting to the regulation.

Accordingly, the Secretary's interpretation of the scope of § 4.59 – that its application is not limited to arthritis claims – is not inconsistent with the regulation or otherwise plainly erroneous. *See Smith*, *supra*. When § 4.59 is raised by the claimant or reasonably raised by the record, even in non-arthritis contexts, the Board should address its applicability. *See Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (Board is required to consider all issues raised either by the claimant or reasonably by the record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009); *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (applicable provisions of law and regulation should be addressed when they are made "potentially applicable through the assertions and issues raised in the record").

### 2. Application to Fact

Mr. Burton contends that the Board erred in failing to address adequately §§ 4.40, 4.59, and painful motion generally, or otherwise assign a minimum compensable rating for his actually painful joints as required by § 4.59. The Secretary argues that (1) the Board adequately addressed § 4.40 and painful motion generally, and (2) no prejudice was caused by the Board's failure to apply § 4.59 because the Board adequately addressed Mr. Burton's joint pain on motion for each time period.

With the exception of the period from August 28 to December 1, 2002, the record supports the Secretary's argument. The Board referenced 38 C.F.R. § 4.40 and pain on motion throughout its decision and Mr. Burton fails to specifically demonstrate error in this regard. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal). Further, although the Board did not explicitly address § 4.59, the Board reasonably addressed joint pain and assigned a compensable rating with regard to the time periods other than August 28 to December 1, 2002, and Mr. Burton otherwise fails to demonstrate prejudice. *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (appellant bears burden of demonstrating prejudice on appeal); *Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (remand unnecessary in "the absence of demonstrated prejudice").

On the other hand, the record supports Mr. Burton's argument that the Board failed to address adequately §§ 4.40, 4.59, and painful motion generally with regard to the period of August 28 to December 1, 2002. Although the Board noted 38 C.F.R. § 4.40 and found that Mr. Burton exhibited no "pain on movement of [his] left shoulder" (R. at 12), it failed to address a September 2002 VA medical examiner's assessment that Mr. Burton was "able to hold [his] arm behind [his] head while explaining pain" and the examiner's diagnosis of shoulder pain, which reasonably raises the applicability of § 4.59. R. at 1171. Further, although the Board noted that the November 2002 VA medical examiner's report found full range of motion, the report merely listed Mr. Burton's subjective complaints of pain on motion and then recorded his range of motion without addressing whether he had any actual pain on motion. *DeLuca*, 8 Vet.App. at 205-06 (rejecting Board's reliance on examination that "merely recorded the veteran's range of motion" without addressing functional loss due to pain upon motion). The Board's failure to discuss adequately these potentially favorable or incomplete reports, in conjunction with the failure to apply § 4.59, frustrate judicial review of the Board's finding of no pain on movement. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (holding that the Board's statement "must be adequate to enable claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"); *see also Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (Board must provide an adequate statement of reasons or bases "for its rejection of any material evidence favorable to the claimant"). Because the Board provided an inadequate statement of reasons or bases and the application of § 4.59 may alter the Board's determination that a compensable rating is unwarranted for this period, remand is warranted. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"); *see also Arneson v. Shinseki*, 24 Vet.App. 379, 388-89 (2011) (finding prejudice where error could have made difference in outcome).

### B. Two Separate Disability Ratings

Although the Board did not address the possibility that Mr. Burton could be entitled to two separate disability ratings for the abduction and flexion limitations of his left shoulder, the record on appeal does not reflect that Mr. Burton raised this argument to the Board. *See Robinson*, 21 Vet.App. at 552. Moreover, although Mr. Burton has both abduction and flexion limitations, these

limitations arise from one disability, and the law does not permit separate ratings under such circumstances. *See* 38 C.F.R. § 4.14 ("The evaluation of the same disability under various diagnoses is to be avoided."); *see also Boggs v. Peake*, 520 F.3d 1330, 1337 (Fed. Cir. 2008) (claimant "cannot be compensated more than once for the same disability"); *Cullen*, 24 Vet.App. at 84 (Court rejected argument that one disability manifesting in multiple symptoms could receive two separate ratings within a particular diagnostic code). Accordingly, it was not error for the Board not to address separate disability ratings, as the issue was not reasonably raised. *See Robinson*, *supra*.

## IV. CONCLUSION

Accordingly, that part of the April 6, 2009, Board decision denying an initial rating in excess of 0% from August 28 to December 1, 2002, is SET ASIDE and the matterREMANDED for further adjudication. The remainder of the decision is AFFIRMED.