﻿Citation Nr: 19159005
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 18-37 652
DATE: July 30, 2019

ORDER

Entitlement to an increased rating higher than 20 percent for chronic lumbar strain is denied.

Entitlement to an increased rating higher than 0 percent for left knee strain with posttraumatic degenerative joint disease with limitation of flexion, effective prior to July 14, 2016, is denied.

Entitlement to an increased rating of 10 percent, but no higher, for left knee strain with posttraumatic degenerative joint disease with limitation of flexion, effective July 14, 2016, is granted, subject to the legal criteria governing the payment of monetary benefits.

Entitlement to an increased rating higher than 10 percent for left knee strain with posttraumatic degenerative joint disease with limitation of extension is denied.

FINDINGS OF FACT

1. The Veteran’s chronic lumbar strain is manifest by forward flexion most severely limited to 40 degrees and functional impairment due to pain. 

2. Prior to February 24, 2015, the Veteran’s left knee strain is manifest by limitation of flexion to 90 degrees with arthritis. 

3. Effective February 24, 2015, the Veteran’s left knee strain is manifest by limitation of flexion to 45 degrees.

4. The Veteran’s left knee strain with limitation of extension is manifest by limitation of extension ranging from 0 to 5 degrees, effective prior to July 14, 2016; and to 10 degrees, effective July 14, 2016. 

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 20 percent for chronic lumbar strain have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5237.

2. The criteria for a compensable rating for left knee strain with posttraumatic degenerative joint disease with limitation of flexion, effective prior to July 14, 2016, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5260.

3. The criteria for a 10 percent rating, but no higher, for left knee strain with posttraumatic degenerative joint disease with limitation of flexion, effective July 14, 2016, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5260.

4. The criteria for a rating in excess of 10 percent for left knee strain with posttraumatic degenerative joint disease with limitation of extension have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Codes 5003, 5010 (prior to July 14, 2016), 5261 (effective July 14, 2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Increased Rating

1. Entitlement to an increased rating higher than 20 percent for chronic lumbar strain

The Veteran contends that he is entitled to a higher rating for his chronic lumbar spine strain. On his June 2015 notice of disagreement, he stated that he should have a 40 percent rating for his lumbar spine disability based on his flexibility. He also stated that he was not given a full examination. 

The Veteran’s chronic lumbar strain is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5237. Under the General Rating Formula for Diseases and Injuries of the Spine, a 10 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent evaluation is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine. 

Any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately under an appropriate diagnostic code. Id. at Note 1. 

Ankylosis is defined as “immobility and consolidation of a joint due to disease, injury, or surgical procedure.” Dorland’s Illustrated Medical Dictionary, 94 (32nd ed. 2012). Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Id. at Note 5. 

When evaluating musculoskeletal disabilities based on limitation of motion, 38 C.F.R. § 4.40 requires consideration of functional loss caused by pain or other factors listed in that section that could occur during flare-ups or after repeated use and, therefore, not be reflected on range-of-motion testing. 38 C.F.R. § 4.45 requires consideration also be given to less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a criteria.”). 

Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however, 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011). 

In Correia v. McDonald, 28 Vet. App 158 (2016), the United States Court of Appeals for Veterans Claims (Court) held that the final sentence of 38 C.F.R. § 4.59 requires that the examiner record the results of range of motion testing “for pain on both active and passive motion [and] in weight-bearing and non-weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint.” The spine has no opposite joint. 

In Sharp v. Shulkin, 29 Vet. App. 26 (2017), the Court held that VA examiners must obtain information about the severity, frequency, duration, precipitating and alleviating factors, and extent of functional impairment of flares from the veterans themselves, when a flare-up is not observable at the time of examination. 

The Board finds that the preponderance of the evidence is against a rating in excess of 20 percent for chronic lumbar strain. The Board acknowledges the Veteran’s lay reports of symptoms and that there was functional loss due to include pain and limited motion. However, even considering the Veteran’s lay reports of symptoms and noted functional loss, the degree of additional limitation reflected by the statements that pain and limited motion would not result in limitation of motion more nearly approximating forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. 

A May 2014 VA examination report shows forward flexion to 80 degrees with painful motion beginning at 40 degrees of forward flexion. There was no additional loss of motion after repetitive use testing. Additional functional loss included less movement than normal, pain on movement, and interference with sitting, standing and/ or weight-bearing. The Veteran also had bilateral lower lumber muscular tenderness. 

An April 2015 VA Disability Benefits Questionnaire (DBQ) shows forward flexion of the lumbar spine to 55 degrees with painful motion also beginning at 55 degrees. The Veteran was not able to perform repetitive use testing as there was significant pain on initial testing. Additional functional impairment included less movement than normal, weakened movement, and pain on movement. The Veteran also had L1-L5 bilateral paraspinal muscle tenderness. There was guarding and/ or muscle spasm present, but it did not result in abnormal gait or spinal contour. 

In an April 2019 statement, the Veteran asserted that his back examination was inadequate in that the doctor only placed his hands on the Veteran’s shoulders and commented that the Veteran was stiff. He indicated that no x-rays, MRIs or other examinations were performed and that the Veteran felt that the examination was not done properly. 

A May 2019 DBQ shows forward flexion in the lumbar spine to 60 degrees with no additional loss of motion after repetitive use. There was pain in the mid and lower lumbar segments that was moderate. There was no objective evidence of pain on non-weight bearing; and passive and active range of motion were the same.

In a June 2019 statement, the Veteran stated again that the examinations were unacceptable, but did not elaborate as to his reasoning as to why he felt this way. The Board finds the examinations of record adequate to rate the claim, as the examiners addressed all pertinent information regarding the Veteran’s functional impairment caused by his back.

Consideration has also been given to assigning a rating under the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes. However, the Veteran does not have IVDS and the evidence of record is against a finding that the Veteran was ever prescribed bed rest by a physician for a duration that meets the criteria for a higher rating. See 38 C.F.R. § 4.71a, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 

None of the VA examinations of record show a diagnosis of IVDS. 

Regarding neurological impairment, the lay and medical evidence of record is against a finding that the Veteran has any other neurological abnormality associated with his spine disability.

Based on the foregoing, the preponderance of the evidence is against the Veteran’s claim for a rating in excess of 20 percent for chronic lumbar strain. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7. 

An inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) also has been considered. The May 2019 DBQ notes that the Veteran stated that during flare-ups he was not able to perform farm work. However, the examiner found that the Veteran’s back disability did not impact his ability to work. Therefore, any inferred TDIU claim is not found in this case.

2. Entitlement to an increased rating higher than 0 percent for left knee strain with posttraumatic degenerative joint disease with limitation of flexion

The Veteran contends that he is entitled to a higher rating for his left knee limitation of flexion. On his June 2015 notice of disagreement, he stated that his left knee disability should be rated as 20 percent disabling. He also stated that he was not given a full examination. 

The Veteran’s left knee disability is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5260, for limitation of flexion of the leg. Under Diagnostic Code 5260, a noncompensable rating is warranted for flexion limited to 60 degrees. A 10 percent rating is warranted for flexion limited to 45 degrees. A 20 percent rating is warranted for flexion limited to 30 degrees. A 30 percent rating is warranted for flexion limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260. 

When evaluating musculoskeletal disabilities based on limitation of motion, the provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 as outlined above, are for consideration. See also DeLuca and Mitchell, both supra. The Board must also consider the provisions of 38 C.F.R. § 4.59 as well as the guidance provided by the Court in Correia and Sharp, both supra. 

The Board finds that the preponderance of the evidence is against a compensable rating for the Veteran’s left knee flexion prior to February 24, 2015. The Board acknowledges the Veteran’s lay reports of symptoms and that there was functional loss due to pain. However, even considering the Veteran’s lay reports of symptoms and noted functional loss, the degree of additional limitation reflected by the statements that his left knee is limited by pain would not result in limitation of motion more nearly approximating flexion limited to 45 degrees. 

A May 2014 VA examination report shows left knee flexion to 80 degrees with no objective evidence of painful motion. The Veteran’s range of motion did not change after repetitive-use testing. Additional functional loss included less movement than normal, pain on movement, swelling, disturbance of locomotion, and interference with sitting. The Veteran also had pain on palpation of joint line or soft issue of the left knee.

A February 24, 2015 DBQ report shows, however, that the Veteran reported constant pain and difficulty doing activities of daily living because of the pain. The diagnosis was left knee strain and degenerative joint disease. Range of motion studies showed flexion of the left knee to 60 degrees with painful motion also beginning at 60 degrees. Repetitive use studies did not change the range of flexion in the left knee. However, the examiner estimated an additional 15 degrees of motion loss during flare-ups, which would be to 45 degrees, which would warrant a 10 percent rating for limitation of flexion.

In an April 2019 statement, the Veteran asserted that the examination for his knee was inadequate in that the doctor did not physically touch his knee or do any x-rays. He also wanted his VA doctor to include records of March 2019 x-rays of the knees.

March 2019 VA x-ray examination records show that the Veteran had marked tricompartmental narrowed joint spaces, severe and medially (bone-on-bone), in both knees and chondrocalcinosis.

A May 2019 DBQ report shows flexion to 90 degrees in the left knee with no additional motion lost after repetitive use testing. The Veteran did not report any flare-ups. 

The Veteran asserted again in a June 2019 statement that the examination was unacceptable but did not offer any reason for this assertion. The Board finds the examinations of record adequate for rating purposes, as all pertinent information was included for rating the Veteran’s left knee disability.

Based on the evidence of record, a rating higher than 0 percent is not warranted prior to February 24, 2015; however, a rating of 10 percent would be warranted based on compensable limitation of flexion, effective February 24, 2015. As for the Veteran’s complaints of limited flexion due to pain in the evidence prior to February 24, 2015, normally a compensable rating would be warranted under Diagnostic Code 5260 due to 38 C.F.R. § 4.59 and Burton. However, as noted in the next section addressing limitation of extension of the knee, the Veteran already has been assigned a rating of 10 percent for limitation of extension for the entire appeal, even though the medical evidence shows that a compensable rating for limitation of extension was not warranted until July 14, 2016. He cannot be assigned two separate 10 percent ratings for limitation of extension and flexion if one or both rating is based on noncompensable limitation of motion due to pain or arthritis under Diagnostic Code 5003/5010. As for flexion, a compensable rating for limitation of flexion is warranted, effective February 24, 2015. However, given that a separate compensable rating for limitation of extension does not apply until July 14, 2016, he cannot receive a separate rating for limitation of flexion until both compensable limitation of flexion and extension is shown on July 14, 2016.

Thus, a separate rating for limitation of flexion is provided as of that date, but not prior.

The Board has also considered the other Diagnostic Codes pertaining to the knee and leg. Other disability ratings may be assigned only if the symptomatology for a disability is not duplicative or overlapping with the symptomatology of any other disability. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994); Lyles v. Shulkin, 29 Vet. App. 107 (2017) (holding that 38 C.F.R. § 4.14 prohibits paying compensation twice for the same symptoms or functional impairment). 

A rating under Diagnostic Code 5256 does not apply, as there is no evidence of ankylosis of the left knee. 

Diagnostic Code 5257 does not apply, as there is no medical evidence of instability or recurrent subluxation of the left knee. The Veteran also has not asserted in any subjective statements that he has experienced instability of the left knee. See English v. Wilkie, 30 Vet. App. 347, 352-53 (2018). 

There is no evidence to show dislocated semilunar cartilage in the left knee. Thus, a rating under Diagnostic Code 5258 does not apply. 

The evidence also does not show symptomatic removal of semilunar cartilage in the left knee under Diagnostic Code 5259. 

Finally, the evidence does not show impairment of the tibia and fibula under Diagnostic Code 5262 or genu recurvatum under Diagnostic Code 5262. 

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran’s claim for a compensable rating for left knee flexion prior to July 14, 2016; but that a rating of 10 percent is warranted, effective July 14, 2016. To the extent that the claim is denied, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7. 

3. Entitlement to an increased rating higher than 10 percent for left knee strain with posttraumatic degenerative joint disease with limitation of extension

The Veteran contends that he is entitled to a higher rating for his left knee limitation of extension. On his June 2015 notice of disagreement, he stated that his left knee disability should be rated as 20 percent disabling. He also stated that he was not given a full examination. 

The assigned Diagnostic Code 5261 suggests that the left knee limitation of extension is rated based on compensable limitation of extension. 38 C.F.R. § 4.71a. A review of the evidence reflects that the left knee disability has manifested as osteoarthritis and been rated based on painful noncompensable limitation of motion, and that the left knee disability has not had compensable limitation of motion (i.e. limitation of flexion or extension) for most of the appeal. As noted in the previous section, limitation of flexion is rated as a compensable level, effective February 24, 2015. The evidence also shows that limitation of extension at a compensable rating is shown, effective July 14, 2016. As of those dates separate ratings can be assigned based on compensable limitation of flexion and extension of the left knee under Diagnostic Codes 5260 and 5261, respectively. However, for the period prior to those dates, the Diagnostic Code assigned should have been Diagnostic Code 5003/5010, to show that the left knee disability with osteoarthritis is being rated based on noncompensable limitation of motion that is painful. For this reason, the Board is changing the Diagnostic Code for the left knee disability prior to July 14, 2016, to 5003/5010 to reflect the actual rating already assigned. 38 C.F.R. § 4.71a. 

Effective July 14, 2016, the Veteran’s left knee disability is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5261, for limitation of extension of the leg. Under Diagnostic Code 5261, a noncompensable rating is warranted for extension limited to 5 degrees. A 10 percent rating is warranted for extension limited to 10 degrees. A 20 percent rating is warranted for extension limited to 15 degrees. A 30 percent rating is warranted for extension limited to 20 degrees. A 40 percent rating is warranted for extension limited to 30 degrees. A 50 percent rating is warranted for extension limited to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5261. 

As noted, when evaluating musculoskeletal disabilities based on limitation of motion, the provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 as outlined above, are for consideration. See also DeLuca and Mitchell, both supra. The Board must also consider the provisions of 38 C.F.R. § 4.59 as well as the guidance provided by the Court in Correia and Sharp, both supra.

The Board finds that the preponderance of the evidence is against a rating in excess of 10 percent for the left knee disability limitation of extension. The Board acknowledges the Veteran’s lay reports of symptoms and that there was functional loss due to pain. However, even considering the Veteran’s lay reports of symptoms and noted functional loss, the degree of additional limitation reflected by the statements that the Veteran’s left knee is painful would not result in limitation of motion more nearly approximating extension limited to 15 degrees. 

Most of the medical evidence of record shows that the Veteran has full extension of the left knee or extension limited to 5 degrees, which would be noncompensable under Diagnostic Code 5261. See May 2014 VA examination report showing full extension to 0 degrees; February 2015 DBQ report showing extension to 5 degrees; and May 2019 DBQ report showing full extension to 0 degrees. However, a July 14, 2016 VA treatment record notes that the Veteran’s extension is limited to 10 degrees, which would warrant a 10 percent rating under Diagnostic Code 5261. Nevertheless, the medical evidence does not show that a rating higher than 10 percent is warranted for limitation of extension of the left knee. 

The Board has also considered the other Diagnostic Codes pertaining to the knee and leg. Other disability ratings may be assigned only if the symptomatology for a disability is not duplicative or overlapping with the symptomatology of any other disability. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994); Lyles v. Shulkin, 29 Vet. App. 107 (2017) (holding that 38 C.F.R. § 4.14 prohibits paying compensation twice for the same symptoms or functional impairment). 

As discussed in the previous section addressing limitation of flexion, however, none of the other diagnostic codes pertaining to the knee would apply. 

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran’s claim for a rating in excess of 10 percent for left knee extension. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7. 

 

S. L. Kennedy

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Sarah B. Richmond

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.