﻿Citation Nr: AXXXXXXXX
Decision Date: 06/16/20 Archive Date: 06/16/20

DOCKET NO. 190605-9715
DATE: June 16, 2020

ORDER

Entitlement to an increased rating in excess of 20 percent for a right knee strain from July 26, 2018 to November 7, 2018 is denied.

Entitlement to an increased rating in excess of 40 percent for lumbar strain with degenerative arthritis of the spine is denied.

Entitlement to an initial increased rating in excess of 50 percent for posttraumatic stress disorder (PTSD) is denied.

REMANDED

Entitlement to an increased rating in excess of 10 percent for right knee strain from November 7, 2018 is remanded.

FINDINGS OF FACT

1. From July 26, 2018 to November 7, 2018, the Veteran’s right knee is manifest by forward flexion limited to 30 degrees.

2. Throughout the period on appeal, the Veteran’s lumbar strain is manifest by forward flexion limited to 30 degrees. 

3. Throughout the period on appeal, the severity, frequency, and duration of the Veteran’s PTSD symptoms did not more closely approximate occupational and social impairment with deficiencies in most areas. 

CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 20 percent for right knee strain from July 26, 2018 to November 7, 2018 have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5260.

2. The criteria for a disability rating in excess of 40 percent for lumbar strain have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Codes 5242-5237.

3. The criteria for a disability rating in excess of 50 percent for PTSD have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. 

The Veteran served on active duty from November 2008 to November 2016. 

This appeal comes to the Board of Veterans’ Appeals (Board) from November 2018 and January 2019 rating decisions issued by a Department of Veterans Affairs (VA) Regional Office (RO). 

The Veteran filed his claims of increased ratings for his service-connected lumbar strain and right knee strain in August 2018 and filed his claim of service connection for posttraumatic stress disorder (PTSD) in October 2018. The agency of original jurisdiction (AOJ) granted an increased rating for the Veteran’s lumbar strain to 40 percent and denied an increased rating in excess of 10 percent for the Veteran’s right knee strain under the legacy appeals system in November 2018. In the January 2019 rating decision, the AOJ granted service connection for PTSD and assigned an initial 50 percent rating. In December 2018 and February 2019, the Veteran filed notice of disagreements (NODs) with the ratings assigned for his service-connected right knee, lumbar strain and PTSD under the legacy system. In May 2019, the AOJ corrected the effective dates assigned to the claims to accurately reflect the date the Veteran filed his claim of service connection for PTSD and the evidence showing increase in severity for his service-connected lumbar strain and right knee strain. The Veteran subsequently filed a timely AMA Notice of Disagreement in June 2019 indicating disagreement with the ratings assigned to each claim. As the Veteran chose the Direct Review Board Review Option without a Board hearing on the Notice of Disagreement, the Board will consider the evidence of record at the time of the November 2018 and January 2019 rating decisions. See 38 C.F.R. §§ 20.202, 20.301. 

Increased Rating

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1.

When considering the propriety of the initial evaluation assigned, consideration of the medical evidence since the effective date of the award of service connection is required. See Fenderson v. West, 12 Vet. App. 199, 125-26 (1999). The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as “staged ratings,” whether it is an initial rating case or not. See Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Importantly, the evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. However, when it is not possible to separate the effects of the service-connected disability from a nonservice-connected condition, such signs and symptoms must be attributed to the service-connected disability. Mittleider v. West, 11 Vet. App. 181, 182 (1998); 38 C.F.R. § 3.102.

When evaluating musculoskeletal disabilities based on limitation of motion, 38 C.F.R. § 4.40 requires consideration of functional loss caused by pain or other factors listed in that section that could occur during flare-ups or after repeated use and, therefore, not be reflected on range-of-motion testing. 38 C.F.R. § 4.45 requires consideration also be given to less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a criteria.”).

Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however, 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011).

1. Entitlement to an increased rating in excess of 20 percent for a right knee strain from July 26, 2018 to November 7, 2018.

The Veteran contends that he is entitled to a higher rating than what is currently reflected. The Veteran filed his claim for increased rating for his service-connected right knee strain on August 13, 2018. The AOJ denied the Veteran’s claim in the November 2018 rating decision. The AOJ subsequently determined in a May 2019 rating decision that a clear and unmistakable error had occurred and the Veteran was entitled to a 20 percent rating from July 26, 2018 to November 7, 2018, the date a private treatment record indicated the Veteran’s right knee had increased in severity. Thus, the period on appeal begins on July 26, 2018, to include the one year look back applicability.

The Veteran’s right knee strain is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5260, for limitation of flexion of the leg. Under Diagnostic Code 5260, a noncompensable rating is warranted for flexion limited to 60 degrees. A 10 percent rating is warranted for flexion limited to 45 degrees. A 20 percent rating is warranted for flexion limited to 30 degrees. A 30 percent rating is warranted for flexion limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

The Board finds that the preponderance of the evidence is against a rating in excess of 20 percent for right knee strain from July 26, 2018 to November 7, 2018. 

Here, the record reflects the Veteran private examination report from Dr. P.Y. conducted on July 26, 2018. Dr. P.Y. indicated examination of the Veteran revealed the Veteran had pain in the right knee which was constant and in varying degrees and intensified with sitting, walking, standing stairs, transition to other positions and arising from a seated position. Flexion was limited to 30 degrees with pain. Extension was adequate. Global swelling, stiffness and joint crepitus were all indicated. 

Medical treatments from a year prior to and following the July 26, 2018 private examination reflects the Veteran’s reports of constant pain in the right knee. However, these records do not reflect the Veteran’s right knee limited the flexion of his leg to 15 degrees nor does the Veteran assert his flexion of the right leg is limited to 15 degrees. In fact, the Veteran indicated in his December 2019 NOD and June 2019 AMA NOD that his is entitled to a 20 percent rating for his right knee during the applicable period on appeal. 

The Board has also considered the other Diagnostic Codes pertaining to the knee and leg. Other disability ratings may be assigned only if the symptomatology for a disability is not duplicative or overlapping with the symptomatology of any other disability. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994); Lyles v. Shulkin, 29 Vet. App. 107 (2017) (holding that 38 C.F.R. § 4.14 prohibits paying compensation twice for the same symptoms or functional impairment). However, the Board finds there are no other Diagnostic Codes applicable to the Veteran’s right knee disability.

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran’s claim for a rating in excess of 20 percent for right knee strain. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

2. Entitlement to an increased rating in excess of 40 percent for lumbar strain.

The Veteran contends that he is entitled to a higher rating than what is currently reflected. The Veteran filed his claim for increased rating for his service-connected lumbar strain on August 13, 2018. The AOJ granted an increased rating of 40 percent effective August 13, 2018 in the November 2018 rating decision. In a May 2019 rating decision, the AOJ corrected the effective date and assigned an effective date of July 26, 2018, the date of private examination showing increase in severity. Thus, the Board finds the period on appeal begins July 26, 2018 to include the one year look back applicability.

The Veteran’s lumbar strain is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5237. Under the General Rating Formula for Diseases and Injuries of the Spine, a 10 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent evaluation is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine. 

Any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately under an appropriate diagnostic code. Id. at Note 1. 

Unfavorable ankylosis is defined as “a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching.” Id. at Note 5. Additionally, fixation of a spinal segment in neutral position (zero degrees) is “always” considered favorable ankylosis. Id.

The Board finds that the preponderance of the evidence is against a rating in excess of 40 percent for lumbar strain. 

Here, the Veteran submitted a private examination report conducted by Dr. P.Y. on July 26, 2018. Dr. P.Y. indicated the Veteran suffered from progressive low back pain which was constant in varying degrees and intensified with standing, sitting and walking. On examination Dr. P.Y. noted flexion was limited to 30 degrees, extension was limited to 5 degrees, right and left rotation was limited 15 degrees, right and left lateral flexion was limited to 15 degrees. There was fixation of 50 percent or more at the lumbosacral joint with moderate hypertonicity of the superficial and deep musculature at that level. 

The Veteran was provided a VA examination for his lumbar spine in November 2018. The examiner noted the Veteran did not suffer from ankylosis of the entire thoracolumbar spine. There were no abnormalities related to the lumbar spine and the Veteran did not have Intervertebral Disc Syndrome (IVDS) of the lumbar spine. 

Medical treatments from a year prior to and following the July 26, 2018 private examination reflects the Veteran’s reports of pain associated with the lumbar spine at varying degrees of intensity. However, these records do not reflect the Veteran’s lumbar spine exhibited unfavorable ankylosis of the entire thoracolumbar spine. 

The Board acknowledges the Veteran’s belief that he is entitled to a rating in excess of 40 percent. However, even considering the Veteran’s lay reports of symptoms of pain and stiffness this evidence would not result in symptoms more nearly approximating unfavorable ankylosis of the entire thoracolumbar spine. 

Consideration has also been given to assigning a rating under the Formula for Rating IVDS Based on Incapacitating Episodes. However, the Veteran does not have IVDS and the evidence of record is against a finding that the Veteran was ever prescribed bed rest by a physician for a duration that meets the criteria for a higher rating. See 38 C.F.R. § 4.71a, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 

For the foregoing reasons, the preponderance of the evidence is against the Veteran’s claim for a rating in excess of 40 percent for lumbar strain. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

3. Entitlement to an initial increase rating in excess of 50 percent for posttraumatic stress disorder (PTSD)

The Veteran contends he is entitled to a higher rating than what is currently reflected. The Veteran filed his original claim of service connection for PTSD on October 18, 2018. The AOJ granted service connection for PTSD in the January 2019 rating decision and assigned a 50 percent rating effective August 13, 2018. In May 2019, the AOJ found a clear and unmistakable error in assigning the August 2018 effective date as the Veteran did not file his claim of service connection until October 18, 2018 which was the correct effective date. The Board finds the appeal period begins October 18, 2018 the date the Veteran filed his claim of service connection for PTSD.

Under the General Formula for Mental Disorders (General Formula), the Board must conduct a “holistic analysis” that considers all associated symptoms, regardless of whether they are listed as criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. The Board must determine whether unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Then, the Board must determine whether the associated symptoms, both listed and unlisted, caused the level of impairment required for a higher disability rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114-118 (Fed. Cir. 2013). 

The issue in this appeal is whether the Veteran’s associated symptoms caused the level of impairment required for a disability rating of 70 percent or higher.

The Board concludes that the Veteran’s symptoms did not cause the level of impairment required for a disability rating of 70 percent or higher. The Veteran’s symptoms more closely approximated the symptoms associated with a 50 percent rating and resulted in a level of impairment that most closely approximated the level of impairment associated with a 50 percent rating.

A 50 percent rating is assigned when symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships cause occupational and social impairment with reduced reliability and productivity.

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

A 100 percent rating is assigned when symptoms such as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name cause total occupational and social impairment.

VA treatment records, the October 2018 PTSD Disability Benefits Questionnaire (DBQ), the January 2019 VA examination, and the Veteran’s lay statements show that the Veteran’s PTSD was manifested by symptoms associated with a 50 percent rating to include panic attacks more than once a week, mild memory loss, flattened affect associated with depression, impaired judgment, disturbances of motivation and mood, and difficulty in establishing and maintaining effective work and social relationships, and symptoms associated with a 70 percent rating, to include difficulty in adapting to stressful circumstances. He also had symptoms that are not listed with a specific rating, such as loss of libido and sexual responsiveness when higher nociceptive symptoms were experienced. 

The Board finds the severity, frequency, and duration of the Veteran’s unlisted symptoms more closely approximate the symptoms contemplated by a 50 percent rating, which are less severe, less frequent, and shorter in duration than those contemplated by a 70 percent rating. The Veteran reported that these symptoms were present only when the Veteran experienced pain associated with his physical disabilities. 

The Board also finds the level of impairment caused by the Veteran’s symptoms more closely approximates the level associated with a 50 percent rating. The Veteran experienced occupational and social impairment with reduced reliability and productivity. Mental status examinations in VA treatment records and the January 2019 VA examination indicate that the Veteran had appropriate thought process. His mood was neutral with appropriate affect. His memory and attention appeared intact. His hygiene appeared adequate as he was always appropriately groomed and dressed and never admitted to any suicidal or homicidal ideations. During the January 2019 VA examination, the examiner noted the Veteran had symptoms of depressed mood, anxiety, suspiciousness, chronic sleep impairment, and disturbances of motivation and mood. The Veteran did not have any other symptoms attributable to his PTSD. The examiner concluded that the Veteran’s level of occupational and social impairment was with reduced reliability and productivity. The Veteran’s October 2018 private PTSD DBQ also noted the Veteran’s level of occupational and social impairment was with occasional decrease in work efficiency. 

While the Veteran did experience some symptoms contemplated by a 70 percent rating, to include difficulty in adapting to stressful circumstances, the evidence overall does not demonstrate the level of impairment associated with a 70 percent rating. As noted above, the Veteran’s other remaining symptoms were either contemplated by or more consistent with a 50 percent rating. Additionally, the Veteran has reported he continues to work and only has difficulties with co-workers of the same rank telling him what to do but otherwise he is able to function. The Veteran also reports he is married and he and his wife get along “ fine.”

For the foregoing reasons, the preponderance of the evidence is against the Veteran’s claim for a rating in excess of 50 percent for PTSD. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

REASONS FOR REMAND

Entitlement to an increased rating in excess of 10 percent for right knee strain from November 7, 2018 is remanded.

The issue of entitlement to an increased rating in excess of 10 percent for right knee strain from November 7, 2018 is remanded to correct a duty to assist error that occurred prior to the November 2018 rating decision on appeal. The AOJ obtained a November 2018 VA examination report prior to the November 2018 rating decision on appeal. However, this examination report did not adequately consider all of the Veteran’s symptomology associated with his right knee strain.

Here, at the November 2018 VA examination, the Veteran reported that he experienced increased sharp pain and stiffness. However, the examiner noted there was no pain exhibited on examination and the Veteran reported no flare ups. Medical treatment records note the Veteran’s reports of chronic pain associated with his right knee on a continual basis. The Board finds remand is required to afford the Veteran an adequate examination to determine the current severity of the Veteran’s right knee. 

The matter is REMANDED for the following action:

1. Schedule the Veteran for an examination by an appropriate clinician to determine the current severity of his service-connected right knee strain. The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran’s disability under the rating criteria. 

In so doing, the examiner must test the Veteran’s active motion, passive motion, and pain with weight-bearing and without weight-bearing. If it is not possible to provide a specific measurement without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training). 

In so doing, the examiner must attempt to elicit information regarding the severity, frequency, and duration of any flare-ups, and the degree of functional loss during flare-ups. If it is not possible to provide a specific measurement based on direct observation, the examiner should provide an estimate, if at all possible, of the additional impairment due to flare-ups based on the other evidence of record and the Veteran’s statements. If it is not possible to provide a specific measurement without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).

 

 

N. RIPPEL

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K. McDuffie, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.